## Elegio Gallegos v. The State.

### No. 3214.   Decided March 15, 1905.

**1.—Murder in Second Degree—Evidence—Questions Answered Favorably to Defendant.**

Where the question of State's counsel as to who was the father of witness' illegitimate child, was answered that it was another man than defendant, there was no injury done the defendant, as the State was attempting to charge him with the paternity of the child to show a motive for the homicide for which he was being tried. Likewise, the question whether witness did not say to the grand jury that defendant was the father of her child, which she answered in the negative, could not affect injuriously the rights of defendant. Besides the testimony under the circumstances of this case was admissible.

**2.—Same—Evidence—Impeaching Testimony—Motive.**

Where the sister of the deceased, on cross-examination by the State, had denied that she had stated before the grand jury that the defendant was the father of her child—the theory of the State being to show motive on part of the defendant for alleged homicide for which he was being tried—it was permissible on part of the State to contradict said witness by another, and show that she had testified before the grand jury that the defendant was the father of her child, the issue of motive being that defendant had been criminally intimate with said sister of deceased.

**3.—Same—Evidence—Motive.**

Where the theory of the State was that the homicide, for which defendant was being tried, occurred on account of the intimacy between him and the sister of deceased; testimony of the wife of deceased that she saw her husband take defendant by the arm and lead him out of the house of the said sister of deceased, and heard defendant and deceased cursing each other, was admissible to show motive.

**4.—Same—Evidence—Place and Time of Confession May be Shown.**

Where the State had introduced the confession of defendant's brother made in his presence, it was permissible to show that the two were seen together at the time and place when and where said confession was said to have been made.

**5.—Same—Corpus Delicti—Confession.**

Wherever the corpus delicte is proved, a confession is of sufficient cogency to connect the party making the same with the homicide and to support the conviction.

Appeal from the District Court of Guadalupe. Tried below before Hon. M. Kennon.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

The testimony for the State showed that defendant, his brother and deceased were seen together at Seguin on the evening of the day that deceased was last seen alive. They were apparently friendly; although defendant or his brother made some allusion to deceased's sister as follows: "You think because you have a sister that I have intentions toward her person," and they acted as if they were a little mad. They were drinking together. This was four days before the dead body of deceased was found in the river. The body was identified as that of deceased; it was all swollen and had a rock weighing about seventy-

five pounds tied around it with a chain; that there was a long gash across the top of the back of the head of deceased; that it could not be told how or with what the gash was made, but possibly with a sharp instrument, or how deep it was, but possibly three inches, or how long the body had been in the water, but possibly a week; that there was some blood on the leaves and the rocks near by and some dark hair found, etc.; deceased also had a bruise on the left side of the forehead, etc.

Besides the facts stated in the opinion, there was some testimony that deceased had objected to defendant coming to see the sister of deceased and that he was mad at him for some cause. Defendant by the testimony of the sister of deceased attempted to show that he and his brother staid at her house on the night of the day deceased was last seen alive, but could not fix the hour they came there, but it was just getting dark the witness said.

The following taken from appellant's brief is substantially correct: Francisco Renes testified that he is acquainted with and has known the defendant and his brother, Severa, for about three years; that he was present up here in Sonka's pavilion or dance hall about a month ago on the occasion of the dance given by the Mexican society for the benefit of a new cemetery, and that the defendant and his brother spoke to him there; that they called him away from the dance hall to give him a drink and that defendant's brother, Severa, then told him that they had done the Antonia deed and after they had done the deed they went to the house of his god-parent, or child, and they went there with the intention to do likewise to Mercede Montoya that they had done to Antonio Montoya; that defendant then said if defendant said anything about what they had told him they would send him on the same road that they did Antonio; that defendant and Severa were both together at the time of the confession; that no one else but defendant and his brother, Severa, were present at the time the confession was made; that no one besides the witness heard the confession; that he knows where Mercede Montoya lives; that he is a friend of defendant; that this conversation occurred here lately, not more than two months ago; that he was sober at the time; that the night was dark; that he has told no one about the conversation excepting Mercede Montoya and the Grand Jury; that the defendant and his brother, Severa, were also sober at the time; that the exact language used by defendant and his brother was "that after they killed Antonio Montoya they went by the house of Mercede to see if they could get him and kill him too"; that no one told him to make this statement and that no one paid him anything to make this statement; that he saw Tanislaus Rios there at that dance that night; that he does not know at what hour they killed Antonio Montoya; that they did not tell him; that they did not tell him that they had tied the rock to him and thrown him in the river; that they did not tell him how they got Antonio Montoya to the river; that they did not tell him where they had

killed Antonio Montoya; that he did not ask them any questions about the matter; that they had said that they had killed him; that they did not use any other name excepting "Antonio"; that defendant and his brother did not tell him where they had stayed that night; that he remembers of Antonio Montoya being taken out of the river and that this conversation occurred after the time that Antonio Montoya was found in the river; that the words used were "that after they did this deed of killing the dead man, Antonio, they came up to Mercede's house with the intention of killing him, too, but everything was so quiet that there they passed on by," and that defendant said, "If you say anything about it we will kill you"; that he has heard of no other "Antonio" being killed about that time.

*Adolph Seideman* and *H. E. Short,* for appellant.—In prosecutions for murder it is incumbent upon the State to establish the corpus delicti clearly and satisfactorily. This corpus delicti consists of, first, a criminal act; second, the defendant's agency in the commission of such act. Israel Lovelady v. State, 14 Texas Crim. App., 545; Israel Lovelady v. State, 17 Texas Crim. App., 286; Pleasant Robinson v. State, 16 Texas Crim. App., 347; Conde et al. v. State, 34 S. W. Rep., 286; Lightfoot v. State, 20 Texas Crim. App., 77; Stephens v. State, 16 S. W. Rep., 764; Harris v. State, 17 S. W. Rep., 1119; Harris v. State, 12 S. W. Rep., 1102; J. F. Barnell v. State, 5 Texas Crim. App., 113; E. L. Tollett v. State, 44 Texas 95.

A naked, uncorroborated, extra-judicial confession is not sufficient to establish corpus delicti nor support a conviction. Harris v. State, 12 S. W. Rep., 1102; Gay v. State, 2 Texas, Crim. App., 127; Lee Hill v. State, 11 Texas Crim. App., 132; Brady v. State, 22 S. W. Rep., 924; Walker v. State 2, Texas Crim. App., 326.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second degree; fifteen years in the penitentiary being fixed as the punishment.

The theory of the prosecution was, that appellant killed deceased on account of some previous troubles which were brought about on account of appellant's intimate relations with the sister of deceased. This is the motive ascribed. The homicide was clearly proved to have been committed by some one. Appellant was connected with the killing by reason of a confession. Renes testified in regard to the confession: "Yes, I was there at the time the Mexicans had a dance up there. Defendant told me something with reference to the killing of deceased, Antonio. They told me, that they had done the Antonio deed; and after they had the deed they went to the house of his god-parent, or child, and went there with the intention to do likewise to Mercede Montoya, that they had to Antonio Montoya. They just

said they killed him, and went up there to Mercede's house." So, the State's case is: the homicide, appellant's connection with it by the confession; the motive—the carnal intercourse by appellant with the sister of deceased. The charge of the court is a full and fair exposition of the law applicable to the facts adduced.

Appellant introduced Eustachio Montoya, who was the sister of deceased and the woman supposed to have had illicit intercourse with appellant, and on her cross-examination, the State's attorney asked her, who was the father of her child, and she answered "Eustachia Ramos." Objection was urged to this, because immaterial, and in no manner tended to connect defendant with the commission of the offense for which he was being tried. We do not agree with this contention. The paternity of the child, under the peculiar circumstances of this case, viewed from the standpoint of the motive, was material testimony. But to the answer here given appellant could raise no objection, because it connected a different man, not defendant, with the paternity of the child; and there was no injury done from that standpoint.

While this same witness was upon cross-examination, the State's attorney asked the following question: "Did you not testify in the grand jury that this defendant was the father of the child you then had in your arms?" She answered, "I did not say that." Objection was urged to this, because of the immateriality of the testimony, and because it tended to show appellant guilty of adultery, he being a married man. Of course, this bill, on the face of it, could not injure appellant, because she had denied the statement.

The following bill, however, was reserved to the admission of the testimony of Clark, who stated that she did answer before the grand jury that appellant was the father of her child. Objection was urged to this, because it in no manner tended to impeach the witness, as the fact whether or not appellant was the father of the child and the paternity of the child, was not an issue in the case; and the evidence could throw no light upon the matter under investigation to wit: the homicide of the deceased; and because it was not permissible to impeach upon an immaterial matter, and it tended to show appellant was guilty of the crime of adultery. We are of opinion that this testimony, under the facts of the case, was admissible. The issue of motive was the fact that appellant had been criminally intimate with the sister of deceased; and deceased seriously objected to his attentions, and there had been some trouble between them on account of this matter. The witness was a witness for defendant, and had laid the paternity of the child upon Ramos. They sought to show her contradictory statements in regard to the paternity of the child, which we think was legitimate as a matter of cross-examination. It has been held that matters of this sort, occurring before the grand jury, when competent for impeachment, or even as original testimony, the proper predicate being laid, is admissible. Wisdom v. State, 42 Texas Crim. Rep., 579.

As presented by these bills, we believe this testimony was properly admitted.

It is further objected that the testimony of the wife of the deceased, wherein she said: "I am the wife of the deceased, Antonio Montoya, and I saw my husband take Eligio, the defendant by the arm and lead him out of Eustachio's house, and I heard them cursing each other. This was at Mr. Will Blumberg's place last year,"—was immaterial and too remote to show motive, and was calculated to prejudice appellant in the minds of the jury. We think this evidence was admissible. The theory of the State was that the killing occurred on account of the intimacy between appellant and the sister of deceased, and this difficulty was predicated upon this very intimacy; it was directly in line with the motive for the killing.

The witness Rios was permitted to testify that he was at Sonka's pavilion, the night the ball was given by the Mexican society, for the benefit of the cemetery, and saw defendant and his brother, Severa, there that night. Various objections were urged to this. It was on this occasion that the witness Renes testified appellant and his brother made the confession. The fact that appellant and his brother were there on that occasion was a legitimate fact to be shown, and it tended to put him in a condition or place where he could make the confession testified by Renes. While it may have been remote, still that would be no objection to its admissibility; it did prove their presence at the place at the time Renes testified they made the confession.

It is contended that the evidence does not support the conviction. We are of a different opinion. That deceased was murdered, weighted with rocks and thrown into the river, was not denied but clearly and strongly proved. The motive for the killing is shown. Appellant's confession, or that of his brother, in his presence, in which the brother said, he and his brother (defendant) did the killing and intended to kill another party the same night, was shown. Wherever the corpus delicti is proved, a confession is of sufficient cogency to connect the party making the confession with the killing; and has been regarded, as far as we are aware, by all the authorities as a sufficient predicate to support the conviction. Some of the authorities, and the later decisions of this court, have gone even farther, and hold that the confession could be used to assist in making out or establishing the corpus delicti. But under all the authorities, so far as we are aware, a homicide being proved, the confession is sufficient to connect the party making that confession with a guilty participancy in the homicide. Attaway v. State, 35 Texas Crim. Rep., 403. The judgment is accordingly affirmed.

*Affirmed.*

Henderson, Judge, absent.