## Etherage McCormick v. The State.

### No. 4234.  Decided February 12, 1908.

**1.—Manslaughter—Evidence—Child-Witness—Discretion of Court.**

Where upon trial for murder, it was shown that the State's witness when tendered as a witness, was ten years old; that he could read and write; was in the third grade; had gone to school; knew it was right to tell the truth and wrong to tell an untruth, and seemed to comprehend that he would be punished by imprisonment if he swore falsely; and that diligent and careful inquiry was made by the trial court as to the competency of the witness, his ruling that he was, will not be reversed under the circumstances.

**2.—Same—Evidence—Bill of Exceptions.**

Upon trial for murder, where the court excluded testimony of the defense, that immediately after the killing, the wife of the deceased stated that her husband was drinking and that she expected just such trouble; for the purpose of contradicting State's testimony, that deceased was not drunk, etc.; and the bill of exceptions did not show that the defendant proposed to prove this fact, or that the witness would have sworn thereto, the same could not be considered on appeal; besides the alleged testimony was a mere opinion of the witness, and inadmissible.

**3.—Same—Evidence—Expert Opinion of Witness.**

Where upon trial for murder, it was not permissible of an expert witness for the State, who was called as a physician to testify with reference to the nature of the wound inflicted upon deceased, to testify as an expert as to the relative position of the parties involved in the homicide, yet his answers, with reference as to the direction of the stroke by defendant, were so self-evident that no sane mind could question the accuracy of the facts stated by him, whether testified about or not, there was no error in admitting such testimony, as it could not have injured defendant.

**4.—Same—Charge of Court—Self-Defense.**

Where upon trial for murder, the theory of the defense was that the altercation between defendant and deceased arose suddenly; that deceased thrust his hand into his pocket as if to draw a knife, and the defendant then seized a stick and struck the deceased, and the charge of the court taken as a whole on the issue of self-defense as applied to the evidence, was sufficient, there was no error in refusing special charges similar in import upon the same subject.

Appeal from the District Court of Hunt. Tried below before the Hon. R. L. Porter.

Appeal from a conviction of manslaughter; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Neyland & Neyland* and *Wm. H. Allen,* for appellant.—On question of child witness: Lawson v. State, 50 S. W. Rep., 345, and cases cited in the opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was indicted in Rockwall County for the murder of one Whit Redding, charged to have been committed on October 1, 1904. The case was tried in Hunt County on a change of venue, and resulted in a conviction for manslaughter.

Several errors are assigned by counsel for appellant in their brief as grounds why this judgment should be set aside.

1. It is contended that the court erred in permitting the witness, Charlie Wade, to testify, over the objections of appellant, for the reason that he was an infant of too tender years to possess sufficient intelligence, and did not comprehend the nature of an oath. We cannot accede to this proposition. The testimony shows that the lad when tendered as a witness was more than 10 years old; that he could read and write; was in the third grade, had gone to school; knew it was right to tell the truth and wrong to tell an untruth; and seemed to comprehend that he would be punished by imprisonment if he swore falsely. He was not alto-

gether apt in some of his answers and when called upon on cross-examination to define or say what the penitentiary meant, he seemed to be at a loss to know just what it did mean. It is not believed that the precedent discussed in Lawson v. State, 50 S. W. Rep., 345, is authority here. The witness in that case was held incompetent not so much on account of his age, but because his voire dire examination affirmatively disclosed such an utter lack of knowledge or concern as to what became of him, and such a frivolous view of the whole matter of the sanctity of an oath as to make the witness subject to objection. In this kind of case much must be left to the discretion of the trial court. Diligent and careful inquiry seems to have been made by the court, and while the witness was quite young when offered as a witness, and much younger at the time when the event transpired about which he was interrogated, we cannot say that he was so wholly wanting either in intelligence or capacity to understand and remember these facts, or that he was so oblivious to the nature and sanctity of the oath taken by him, or so lacking in intelligence as that he ought not to have been permitted to testify at all. We think that having due deference to the trial judge we ought not and cannot sustain this objection.

2. Complaint is made that the court erred in not permitting the defendant to prove that immediately after the killing, and just as the wife of the deceased came up to him, as he was lying in the road, she said that the deceased was drinking, and that she had been expecting just such trouble. This was offered in connection with the testimony of Mrs. Redding that the deceased was not drunk, and had no whisky on his person, and none at the house, and in view further of the testimony of the witness Shook that the deceased was more violent and quarrelsome when drinking than when sober. In this connection it is obvious that the bill of exceptions touching this matter is defective on two grounds: First, it does not show on what ground the testimony was offered; and second, the bill merely shows that the appellant proposed to prove this fact, but does not affirmatively show that they could have proved it, or that the witness would have sworn to the facts stated. In a proper case this testimony might have been used to impeach the wife if she had testified. As a matter of fact, she did not testify, but was dead at the date of the trial. It was a mere statement of opinion of the witness that he was drunk, and was not a statement of any fact that could in any way be held to be admissible. Skaggs v. State, 31 Texas Crim. Rep., 563, and Drake v. State, 29 Texas Crim. App., 266. It could not be admissible on the theory that the declaration or statement of deceased's wife was such as to call for an answer for the reason that the proof is conclusive that at the time the remark was made the deceased was unconscious and never regained consciousness.

3. The next contention of appellant is, that the court erred in permitting the witness Dr. Austin to testify as to how the defendant would have struck the deceased if he was standing in front of deceased at the time he struck the blow which caused his death. This testimony was

offered in connection and having reference to the testimony of the witness Russell, who testified that the defendant was facing the deceased when he struck the blow, and that he had the stick with which he inflicted the blow in his right hand, and having reference to the testimony of Charlie Wade, who testified that deceased had his back to the defendant when defendant struck the deceased. It was undisputed that the blow was inflicted on the right side of the head, and the contention is, that the statement and testimony of Dr. Austin that in his opinion, if the defendant was standing in front of deceased when he struck the blow, the blow would have been inflicted on the left side of the head, was irrelevant and speculative, and called for an opinion, which was not a matter of expert or medical skill. Appellant in this case refers to the following authorities: Williams v. State, 30 Texas Crim. App., 429, and Thompson v. State, 30 Texas Crim. App., 325. The authorities cited by appellant sustain the general proposition contended for by him. In the Williams case, supra, it was distinctly held that expert opinion evidence of medical witnesses is not admissible to prove the relative position or situation of the parties involved in the homicide, or assault with intent to murder, and in that case it was held error to permit, over the objections of the defendant, the testimony of the physician who from an examination of the wound was of the opinion that the party was sitting in an upright position when shot. We do not believe, however, that as the matter is presented in the bill, that the rule here contended for has much application. The bill recites that the witness, Dr. Austin, was permitted to testify and did testify that *if* defendant was standing in front of the deceased at the time he struck him with the stick and had the stick in his *right hand* the blow would have been inflicted on the left side of the head. This was objected to, as stated in the bill, because such evidence was irrelevant, immaterial and purely speculative, and called for an opinion, and not a fact which calls for expert or medical opinion. The bill was approved with the explanation by the court that the witness R. B. Russell had testified that he saw the lick struck and that defendant held the stick in his right hand, and showed the jury how the stroke was made, and the district attorney in asking Dr. Austin the question held the stick as witness Russell showed defendant held it and made the motion for a stroke that said witness made before the jury; and the defendant asked said witness if a stroke made in a different way, such as a backhand stroke, could have inflicted that wound, and Dr. Austin answered, yes. Clearly these are not matters which the witness Austin, as a physician, was justified or authorized to give an opinion about, but his answers are so self-evident that no sane mind could question the accuracy of the facts stated by him, whether testified about or not, and it is clear that the State having shown that if two men facing each other, and the assaulting party holds a stick in his right hand, and strikes his adversary, that he will, unless it be a backhand blow, strike him on the left side of the head, if he strikes on the head at all, and it equally follows that a blow on the left

side of the head might and could be given by an underhand stroke. We think, therefore, that the testimony could not have injured appellant, and that he is without any cause of complaint to its admission.

4. The fourth assignment relied on in brief by counsel for appellant is, as follows: The court erred in his general charge, in failing to call the attention of the jury to the necessity of there being an intent on the part of the defendant to take the life of the deceased, and failed to present the facts going to the defense, as requested by the defendant in special charges Nos. 11, 2 and 3, and failed to charge the jury that there must have been a specific intent on the part of the defendant to take the life of the deceased at the time of the difficulty. The statement made by counsel for appellant, as illustrating their ground of complaint, presents the matter quite clearly, and is as follows: "The facts relied upon by the defendant to establish self-defense were, that while the defendant was wholly unarmed, and was standing in the road in front of the deceased, talking to deceased, that the deceased, who had been holding his baby in his right arm, suddenly changed the baby from the right arm to the left arm, and thrust his right hand into his pocket as if to draw a knife, and the defendant then seized a stick, which happened to be near, and struck the deceased to prevent the deceased from assaulting him with his knife. The court in charging on self-defense nowhere mentioned these acts on the part of deceased, nor does he instruct the jury that if defendant had reasonable grounds to apprehend that the deceased was about to assault him with a knife and thereby inflict upon him serious bodily injury or death, he would be justified in striking the deceased to prevent such an assault, although it appeared to the jury that in fact the deceased did not at the time so intend, and the evidence failed to show that he was in fact at the time armed with a knife. This charge was especially necessary in this case, as the evidence failed to show that the deceased had a knife in his pocket at the time." We do not agree with this contention. We believe that, fairly considered, the charge of the court was not only a correct but a sufficient presentation of the law of self-defense. On that question the charge of the court is as follows: "Homicide is jusifiable and is no offense against the law when committed in necessary self-defense. This occurs when one is attacked in such a manner as to produce in his mind a reasonable apprehension of death or serious bodily injury or where it reasonably appears to one from the act or acts coupled with the words of the person killed, that the slayer is thereby in danger of death or serious bodily injury, and he kills to protect himself from such danger, then such killing is deemed to be in justifiable self-defense.

"No person is bound to retreat in order to avoid the necessity of killing his assailant. Any one, in defending himself, has the right to stand his ground, defend himself, and to kill his adversary if necessary. But one who is unlawfully attacked must use no more force in repelling such attacks than it reasonably appears to him to be necessary to accomplish that end.

"When the question arises as to whether or not the person committing the homicide has reason to apprehend danger, the facts and circumstances must be viewed and considered from his standpoint at the time and from no other. And if the deceased at the time was using or attempting to use a weapon calculated to inflict death or serious bodily injury, it is to be presumed that he intended to inflict death or serious bodily injury.

"If you believe from the evidence that the defendant, Etherage McCormick, killed Whit Redding on or about the 1st day of October, 1904, in Rockwall County, Texas; and, if you further believe that at the time of or shortly prior thereto the deceased was in the act of making an attack upon defendant, or made some demonstration indicating an immediate intention of inflicting death or serious bodily injury upon the defendant; or, if deceased was doing some act or acts, which either alone, or together with accompanying words, produced in the mind of the defendant, as viewed from his standpoint, when considered with all the facts and circumstances as known to defendant, or as believed by the defendant to exist, a reasonable apprehension of death or serious bodily injury at the hands of said Whit Redding, then the defendant had the right to kill the deceased in self-defense; and, if you believe that he did kill deceased by striking him with a stick to protect himself from said danger or apparent danger, and that in doing so he used no more force than it reasonably appeared to him to be necessary, then such killing was in justifiable self-defense and you should find the defendant not guilty." This, in effect, told the jury that the defendant was not called upon to retreat, that he had a right to stand his ground and defend himself against real as well as apparent danger, and that the defendant had a right to have his defense, viewed from his standpoint by the jury. These special charges relating to this matter were requested by counsel for appellant, but the substance of them was embodied in the first special charge, which is as follows: "Homicide is justifiable in law in the protection of the person against any unlawful and violent attack of such a nature as produces a reasonable expectation or fear of death or some serious bodily injury. Therefore, if you find from the evidence that the deceased and the defendant were engaged in a verbal altercation, that the deceased became enraged at the defendant and made an assault upon him by reaching for his knife, and that such an assault produced in the mind of the defendant a reasonable expectation or fear of death or some serious bodily injury, then the defendant would be justifiable in killing the deceased, and you should return a verdict of not guilty." The court charged the jury that if deceased at the time was using or attempting to use a weapon calculated to inflict death or serious bodily injury, it is to be presumed that he intended to inflict death or serious bodily injury. The court further charged the jury that, if defendant struck the fatal blow but that at the time or shortly prior thereto, the deceased was in the act of making an attack upon the defendant, or made some demonstration indicating an intention of inflict-

ing death or serious bodily injury upon the defendant, or if deceased was doing some act or acts which either alone or together with accompanying words produced in the mind of the defendant as viewed from his standpoint when considering all the facts and circumstances as known to defendant, or as believed by the defendant to exist, a reasonable apprehension of danger, then defendant had the right to kill. As we view the matter, the only substantial difference in the charge of the court and the charge requested is, that the defendant in his special charge uses the word "knife" in the place where the court uses the words "a deadly weapon or instrument likely to produce death or serious bodily injury"; and in failing in terms to charge that if the deceased and defendant were engaged in a verbal altercation and deceased became angered and attempted to draw a knife. The charge of the court, taken as a whole, is not, we believe, susceptible to the criticisms made by counsel for appellant, nor is it insufficient nor defective in failing to submit the issue of self-defense as made by the testimony. The defense of self-defense under all the testimony was not very strong, but it was the right of appellant, if raised in the evidence at all, to have every legitimate issue applicable to it submitted to the jury by the court. We believe the court did this.

We have carefully reviewed the entire record, and in the light of the brief and the able oral argument of counsel for appellant, and cannot see but that defendant has had a fair and impartial trial and that under all the circumstances he may well be congratulated that no higher penalty was assessed against him.

Finding no error in the record, the judgment is affirmed.

*Affirmed.*

[Motion for rehearing overruled March 20, 1908, without written opinion.—Reporter.]