DAVE ANDERSON v. THE STATE.

No. 3864.   Decided April 22, 1908.

**1.—Murder—Continuance—Want of Diligence.**

Where upon trial for murder defendant's application for continuance was based upon the testimony of a witness who was a fugitive from justice, whose whereabouts were unknown to the defendant and the officers; and who could not have testified to anything material for the defendant, the same was correctly overruled.

**2.—Same—Copy of Indictment—Sheriff's Return.**

Where upon trial for murder the defendant moved to quash the sheriff's return on the precept issued to serve a copy of the indictment, and the record showed that the sheriff had made a clerical error in his return of the number of the indictment, but that in truth and in fact he served the defendant with the true copy of the indictment upon which he was tried, there was no error.

**3.—Same—Evidence—Circumstances.**

Where upon trial for murder, the evidence was to some extent circumstantial, there was no error to admit testimony that the defendant bought some gun shells a week or two before the homicide; it being shown that shells of the same kind were found on the ground near the scene of the homicide on the next morning.

**4.—Same—Evidence—Motive—Acts of Intimacy.**

Upon trial for murder where the theory of the State was that undue intimacy existed between the defendant and his female codefendant; that they were infatuated with one another; that the deceased was the husband of said codefendant, and that this infatuation was the motive for the murder, there was no error in admitting testimony with reference to the association and conduct of defendant and the said codefendant, while together shortly before the homicide. Following Dill v. State, 1 Texas Crim. App., 278, and other cases.

**5.—Same—Evidence—Child-Witness—Obligation of Oath—Discretion of Court.**

Where upon trial for murder, the record showed that while the witness, who was fourteen years of age, may not have understood the technical meaning of the obligation of an oath, yet altogether it was shown beyond all doubt the witness thoroughly understood the nature and quality of the truth as it differs from falsehood, her liability to punishment by the courts, and her moral responsibility and the binding effect of an oath on her conscience, there was no error in overruling the objection that the witness did not understand the obligation of an oath. Following McCormick v. State, 52 Texas Crim. Rep., 493.

**6.—Same—Evidence—Intimidating Witness.**

Where upon trial for murder the defendant objected to a State's witness testifying in the case because the sheriff had threatened to lock her up if she did not testify, such reason would not disqualify the witness from testifying but would simply effect her credibility; besides she was urged by the defendants not to divulge what she knew.

**7.—Same—Charge of Court—Defendant as a Witness.**

Upon trial for murder where the court charged that it is not incumbent on a defendant in a criminal case to testify in his own behalf, and a failure to do so is not even a circumstance against him, and no presumption of guilt can be indulged in by the jury on account of such failure on his part; and that such failure on the part of the defendant to testify cannot be considered for any purpose by the jury, there was no error. Following Leslie v. State, 49 S. W. Rep., 73.

**8.—Same—Sufficiency of the Evidence—Death Penalty.**

Where upon trial for murder in which the death penalty was inflicted, the evidence if true showed defendant's guilt, and which was sufficient to sustain the finding of the jury, and the sanction and approval of the trial court, the verdict will not be disturbed.

Appeal from the District Court of Falls. Tried below before the Hon. Richard I. Munroe.

Appeal from a conviction of murder in the first degree; penalty, death.

The opinion states the case.

*S. O. Jones* and *J. H. Anderson*, for appellant.—On question of continuance: Hardin v. State, 52 Texas Crim. Rep., 238; 106 S. W. Rep., 352; Peeler v. State, 2 Texas Crim. App., 455; Holder v. State, 13 Texas Crim. App., 601. On question of sheriff's return on precept of serving copy of indictment: Abrigo v. State, 29 Texas Crim. App., 143; Pridgen v. State, 31 Texas, 420. On question of admitting testimony of gun shells found: Preston v. State, 4 Texas Crim. App., 186; Cooper v. State, 23 Texas, 331. On question of intimacy between defendant and his co-defendant, same authorites last above cited, and Early v. State, 1 Texas Crim. App., 248. On question of defendant's failure to testify and court's charge thereon: Goode v. State, 2 Texas Crim. App., 520;

Williams v. State, 18 Texas Crim. App., 409; White v. State, 37 Texas Crim, Rep., 651.

*F. J. McCord,* Assistant Attorney-General, and *Tom Connally,* County Attorney, for the State.—Cited cases in opinion.

RAMSEY, JUDGE.—The appellant in this case was convicted of the murder of one Oscar Crosby and his punishment assessed at death. The killing is shown to have occurred on the 10th day of December, 1907. The deceased was shot and killed one night about 9:30 o'clock at his house. He was called from his room and assassinated. Lula Crosby, the wife of the deceased, was also indicted as a principal in the murder. The motive for the killing was the supposed and alleged infatuation of appellant and Lula Crosby with each other and their wish to remove deceased as an obstacle to the realization of their fondness and infatuation for each other. An indictment in the case was returned against appellant on the 20th day of January, 1908. The case was called for trial on the 28th day of the same month.

1. When brought to trial, the appellant made an application for a continuance for the want of the testimony of one Dr. Jackson, whose other further name was not given. This motion was substantially to the effect that the continuance was sought on account of the absence of Dr. Jackson, a witness in appellant's behalf who was not in attendance upon court, and alleged first, that the residence of Dr. Jackson was to affiant unknown, and second, that on the 27th day of January, appellant caused a subpoena to be issued to Falls County for said witness which had neither been served upon him nor returned to court by the sheriff. The facts expected to be proved by said witness are thus stated: "That Lula Crosby, a codefendant in this case, went to Dr. Jackson to procure a drug to kill her husband, Oscar Crosby, the deceased; that appellant expects to show motive on the part of said Lula Crosby for killing her husband; that he expects to prove by said witness an alibi; that he was not present when the homicide was committed and also to prove by said witness other material facts." The application contains the general statutory averments. The granting of this application was contested by the State on the ground that the witness Dr. Jackson for whose absence the continuance was sought was a fugitive from justice; that he was not in Falls County, nor had he been since the 13th day of July, 1907, long prior to the death of Oscar Crosby; that appellant was not even acquainted with him and does not know his whereabouts, and that there was no reasonable expectation of ever procuring his attendance for the reason that on the 13th day of July, 1907, the county clerk of Falls County had issued a capias for the arrest of Dr. Jackson, which had been placed in the hands of M. J. Poole, sheriff of Falls County, who ever since said time had made diligent search for, and effort to arrest said Jackson but had been unable to ascertain his whereabouts; that the said M. J. Poole, sheriff as aforesaid, had for

six months and ever since the issuance of said capias made diligent inquiry over the State of Texas of other peace officers in an endeavor to execute said capias, but that said inquiry was without avail and said capias still remains in the hands of the said M. J. Poole unexecuted. This contest was verified by the affidavit of the sheriff of Falls County. On the trial the proof utterly failed to show any connection that the missing witness had with the defendant or with Crosby, or his whereabouts at the time of the killing, or that he was in appellant's company on the day or night of the killing, and there is not in the record anything that even remotely shows or tends to show that the said Dr. Jackson in anyway was informed of or had any information in reference to the killing or the whereabouts of appellant at or before the homicide, or any other fact which could have been of the slightest service to appellant. It will be noted that there is no allegation of any diligence whatever, or as to what diligence, if any, had been exercised to ascertain the whereabouts of the witness. Again, it is shown very clearly that the witness was a fugitive from justice, his whereabouts unknown, nor did it appear that there was any reasonable expectation that his presence and attendance as a witness could ever be procured. In this state of the case, the court was not called upon to continue the case and there was no error in overruling appellant's application for a continuance. Sims v. State, 45 S. W. Rep., 705; Sinclair v. State, 34 Texas Crim. Rep., 453; 30 S. W. Rep., 1070. Again, in view of the fact that appellant and Lula Crosby were both charged with the killing and in pursuance of a common design, the fact that Lula Crosby had a motive for killing her husband would not, of necessity be of any value, or constitute in any respect a defense to the appellant here.

2. Complaint is made of the error of the court in overruling the motion of appellant to quash the sheriff's return on the precept issued to serve a copy of the indictment returned by the grand jury against him. This motion was to the effect that appellant had never been served with a certified copy of the indictment preferred against him in said cause, as is required by the Constitution and laws of this State, in that the sheriff's return shows that he was served with a certified copy of indictment in cause No. 4778, which was not the number of the indictment returned against him by the grand jury of Falls County; that the correct number of the indictment returned against him was No. 4779, but the sheriff's return shows that appellant was served with a copy of an indictment against another person than himself and charged a different offense entirely from the one with which he was charged, and that appellant was thereby surprised and had not sufficient time to prepare his defense. The bill of exceptions which preserved the evidence of the action of the court with respect to this matter is approved with the qualification, that the affidavit of the sheriff and the clerk show that appellant had in fact been served with a true copy of the indictment against him and that the copy so furnished

him bore the correct number. In answer to this motion there was filed an affidavit of the sheriff of Falls County to the effect in substance, that he in person delivered to the appellant a true and certified copy of the indictment in this cause, being No. 4779, but that in making his return on the process he erroneously, through a clerical error, misstated the number of said cause to be 4778, but the said copy contained the true number, to wit: 4779; that the clerk of the court, Mr. Bradshaw, prepared and certified said copy and delivered same to affiant. The sheriff on the hearing of the motion to quash the process on oath in open court stated the facts herein recited upon which the court overruled the motion. The clerk, Mr. Bradshaw, was also examined and testified in substance that he made a certified copy of the indictment in this cause, No. 4779, which certified copy was a true and correct copy of the indictment now on file in this cause and bore the correct No. 4779; that No. 4778 was a misdemeanor indictment and was not on file in his office but had been transferred to the county court at the July term of court, 1907; that he delivered a copy to the sheriff in person and was on his way home, which leads by the jail, and saw the sheriff deliver to the appellant in person the copy which he made and which was No. 4779; that the reason he knows it was a correct copy was because he had just made it and delivered it to the sheriff, and that the reason he knew that it was not a copy of indictment 4778 was because there was no such indictment in his office, and he knew the copy of the indictment served bore the correct number and was a true copy. The copy served on appellant was not produced on the hearing of this motion, and it is evident from all the facts and circumstances that the sheriff's return stating and referring to the case as No. 4778 was a mere clerical error; that he was in truth served with a true copy of the indictment in this case, No. 4779, and is without any possible ground of complaint in respect thereto.

3. On the trial, the State was permitted to prove by Ed. Lloyd, over the objection of appellant, that he, appellant, bought some gun shells about ten days or two weeks before the homicide, which testimony was objected to for the reason that same was irrelevant, immaterial and too remote from the time of the alleged homicide and only tended to prejudice the jury against the appellant. This testimony was offered on the theory that it was an act of preparation on the part of appellant and was a circumstance tending to show that he had both the means and the opportunity to commit the crime. It was shown that shells of the same kind were found on the ground near the scene of the homicide on the next morning. To some extent the case was one of circumstantial evidence, and any act or conduct of appellant by way of preparation was a circumstance to be considered by the jury for whatever they might consider same worth, and we think the court did not err in admitting same.

4. Objection was made to the admission of the testimony of Ed. Lloyd and Will Harlan with reference to the association and conduct of appel-

lant and Lula Crosby while together. The testimony of Ed. Lloyd was to the effect that he saw appellant and Lula Crosby going to and returning from the town of Reagan together. Will Harlan testified that appellant and Lula Crosby picked cotton together and that Dave (appellant) would ·carry Lula's sacks for her and they seemed to be very intimate with each other, too much so he thought. This testimony was objected to on the ground that it was irrelevant, immaterial and too remote from the time of the alleged homicide, and that no conspiracy between the parties had been proved and that this was the introduction of an act upon the part of the State to put appellant's character in issue. The facts in the case on the trial showed that appellant and the deceased had been living in the same house; that the wife of appellant had left for some cause, leaving him, deceased and Lula Crosby, and the State's witness, Elenor Cheathan, living in the same house. Shortly after appellant's wife left, the deceased went away to the sugar farm to engage in work and in his absence appellant and deceased's wife resided in the same house. While deceased was at home appellant and his wife did not go together, but in his absence they were seen going together frequently; that while deceased was away from home they picked cotton together and appellant paid more attention to deceased's wife than to his own. Appellant and Lula Crosby were both indicted for the murder of Oscar Crosby, and the theory of the State was that undue intimacy existed between the two and that this was the motive for the murder of Oscar Crosby. While there was no witness to testify in terms to any act of carnal intercourse between the parties, still all the testimony taken together present a case of strong circumstantial evidence that they were in fact intimate. This testimony was introduced for the purpose of showing motive and for that purpose only. It tended strongly to support the theory of the State that appellant and Lula Crosby had become infatuated with one another and that it was their purpose to get rid of Oscar Crosby so that they might be free to carry on their liason. This evidence was clearly admissible to show motive on the part of appellant. Dill v. State, 1 Texas Crim. App., 278; Jones v. State, 4 Texas Crim. App., 436; Gallegos v. State, 48 Texas Crim. Rep., 58; 85 S. W. Rep., 1150; Rice v. State, 49 Texas Crim. Rep., 569; 94 S. W. Rep., 24, 1011.

5. Objection was seriously made to the court permitting the witness Elenor Cheathan to testify for the reason, as claimed, that she did not comprehend what was meant by the obligation of an oath. This witness was at the time she testified, 14 years of age. She said, among other things, "I know that it is wrong to tell a story, and I know that they will put me in the penitentiary if I tell a lie in the courthouse. I have been to school and can read and write. I also go to Sunday school and know that if I tell a lie I will go to the bad place." She further says on cross-examination: "I don't know what is meant by the obligation of an oath." It has been uniformly held by this court and is, as we understand, the rule which obtains everywhere, that the matter of

passing on the competency and understanding of the witness is left largely to the sound discretion of the trial court. The demeanor and manner of the witness on the stand is often as pertinent a factor in determining the mental capacity and competency of a witness as anything else. In this case, as above noted, the witness was 14 years of age and for one of her color and age, remarkably well informed. She testified that she could read and write; that she went to Sunday school, knew it was wrong to tell a lie and that if she did so that it would send her to the penitentiary and that she would go to the bad place. The insistence of counsel is, however, that because of her statement that she did not understand the obligation of an oath, that she was thereby disqualified. While it may be that she did not understand the technical meaning of that phrase, the testimony taken altogether shows, beyond all doubt, that she thoroughly understood the nature and quality of the truth as it differs from falsehood, her liability to punishment by the criminal courts and her moral responsibility and the binding effect of an oath on her conscience. Objection was also made that her testimony should not be received for the reason that she had been threatened by the sheriff that unless she told the truth he would lock her up. This would not disqualify her from testifying but would simply go to effect her credibility. This is the more true in view of the fact that both appellant and her mother, Lula Crosby, had urged her not to divulge what she knew and to shield them in respect to the crime charged against them. In the case of Mason v. State, 2 Texas Crim. App., 192, a witness seven years of age was offered by the State. An objection was made that said witness by reason of his tender age was not competent. It appeared in that case that the witness was only seven years of age but on examination said that if he swore a lie the bad man would get him and that he would go to Huntsville (by this he meant to the penitentiary). This witness was held to be competent. In the case of Hawkins v. State, 27 Texas Crim. App., 273, referring to subdivision 2 of article 730 of the Code of Criminal Procedure, which denounces as incompetent to testify in criminal actions, "children or other persons, who after being examined by the court, appear not to possess sufficient intelligence to relate transactions with respect to which they are interrogated, or who do not understand the obligation of an oath," the court said: "There is no precise age under which a child is deemed incompetent to testify, but when under fourteen years of age competency is determinable by an examination, and the action of the trial court thereon will not be revised in the absence of a showing that its discretion was abused, and unless an abuse of discretion is apparent." In that case the witness was a boy of eleven years of age and while as stated by the court, "he seems to have known but little if anything about the obligation of an oath, he knew it was wrong to tell a lie and that it was right to tell the truth." This witness was held to be competent. See also Wolfforth v. State, 31 Texas Crim. Rep., 387; 20 S. W. Rep., 741; McCormick v. State, 52 Texas Crim. Rep., 493; 108 S. W. Rep., 669.

We think the court below did not err in holding this witness qualified and competent to give testimony, under the law.

6. The only complaint made of the charge of the court is to the instruction in respect to the failure of appellant to testify in his own behalf. This charge, it is complained, was not sufficiently full and explicit, it being contended that it was not sufficient for the court to charge that the fact that appellant did not testify in his own behalf, "is not even a circumstance against him, and no presumption of guilt can be indulged in by the jury on account of such failure on his part," but that the court should have gone further and instructed the jury that the failure of the defendant to testify was a circumstance which the jury should neither discuss nor comment upon, nor should they in any way allow it to influence them in arriving at their verdict. The charge of the court complained of is aas follows: "You are further charged that it is not incumbent on a defendant in a criminal case to testify in his own behalf, and a failure to do so is not even a circumstance against him, and no presumption of guilt can be indulged in by the jury on account of such failure on his part. Such failure on the part of the defendant to testify cannot be considered for any purpose by you." Article 770 of our Code of Criminal Procedure is as follows: "Any defendant in a criminal action shall be permitted to testify in his own behalf therein, but the failure of any defendant to so testify shall not be taken as a circumstance against him, nor shall the same be alluded to or commented on by counsel in the cause; provided that where there are two or more persons jointly charged or indicted, and a severance is had, the privilege of testifying shall be extended only to the person on trial." The case of Leslie v. State, 49 S. W. Rep., 73, is very much in point and completely answers appellant's contention. In that case it is held that the fact that the court gave as a charge a portion only of the statute in respect to accused's failure to testify, and not the entire statute, is not erroneous, and that under article 770 of the Penal Code prohibiting the jury from considering the fact that accused failed to testify, the mere question by one juror whether he had a right to testify and an answer by another that he did, would not authorize a reversal of the case. In that case the court charged the jury as follows: "In this case you cannot consider as a circumstance against the defendant the fact that he failed to testify in his own behalf." And Judge Brooks, in passing on this charge, speaking for the court says: "The fact that the court gave only a portion of the article on the subject and not the entire article of the statute, was not error." The charge in this case is fuller and more complete than the charge complained of in the Leslie case. See also Fulcher v. State, 28 Texas Crim. Rep., 465; 13 S. W. Rep., 750. There was no additional instruction, or modification or amplification of this matter sought by appellant. We think the charge was not erroneous and that the giving of same was not a reversible error.

If the testimony in this case is to be believed, and if the testimony of

Elenor Cheatham is to be accepted as true, the record shows the killing of Oscar Crosby to have been a foul and treacherous assassination. Her testimony would leave no doubt of the appellant's guilt. Strong motive is shown, threats appear in the testimony and in view of the untrue claim of appellant as to his whereabouts at the time of the tragedy, viewed in the light of all the testimony, a strong case is made against him. There is, it should be stated, some reason to believe that the testimony of Elenor Cheatham was given with some idea of suggestion of saving her mother, Lula Crosby, from punishment and the threats of the sheriff to punish her if she did not testify to. the truth, was an especial reason why the jury should have looked at her testimony in a spirit of caution. However, the credibility of this testimony as well as the weight of the entire evidence was a matter plainly for the jury and subject, of course, to the review of the trial court, and of this court. The jury have found appellant guilty on evidence, which if true, is sufficient to sustain the finding, and the verdict having received the sanction and approval of the trial court who had a better opportunity than ourselves to judge and determine its credibility and sufficiency. We cannot, under all the rules which govern us and should govern us, interfere or intervene, and set aside the judgment of the court below. We have reviewed the case carefuly, and while we have not discussed all the questions relied on by the appellant for reversal, they are not of a material character and we do not believe there was any error committed by the court in respect to them. It follows, therefore, that the case must be affirmed and it is accordingly so ordered.

*Affirmed.*

Brooks, Judge, absent.