### Reeves Bolden v. The State.

#### No. 3664.    Decided June 23, 1915.

**1.—Murder—Evidence—Ill-will—Implied Malice.**

Where, upon trial of murder under the old statute, there was no ques-
tion of express malice in the case, but the evidence showed that the homicide
occurred from a quarrel then and there engendered, there was no error in not
admitting in evidence testimony that the defendant had no ill-will or malice
against the deceased on that occasion, the court only submitting murder on
implied malice.

### 2.—Same—Evidence — Cross-Examination — Coroner's Inquest—Impeaching Witness.

Upon trial of murder, there was no error in permitting the State on cross-examination of defendant's witnesses to interrogate them with reference to their testimony on a former trial, and also that before the coroner, for the purpose of laying a predicate for the introduction of testimony, showing that the witnesses had made contradictory statements to that made by them upon the instant trial; the court properly limiting such testimony to purposes of impeachment; and it was immaterial whether the defendant was present on said coroner's inquest, or not. Following Huffman v. State, 28 Texas Crim. App., 174, and other cases.

### 3.—Same—Argument of Counsel—Bill of Exceptions.

Where the trial court refused to approve a bill of exceptions taken to the argument of State's counsel, and the matter was not proved up as required by statute, there was nothing to review.

### 4.—Same—Argument of Counsel—Bill of Exceptions.

Where the bill of exceptions to the argument of State's counsel did not point out those portions of the speech to which defendant excepted, this court can only consider the requested charges submitted on this matter, and where the record showed that State's counsel's argument was legitimate, there was no reversible error.

### 5.—Same—Argument of Counsel.

Where the objections to argument of counsel were too general to call for a review, and the argument in itself as disclosed by the record was legitimate, there was no reversible error.

### 6.—Same—Charge of Court—Murder—Implied Malice.

Where, upon trial of murder, the evidence showed implied malice, there was no error in the charge of the court in submitting the issue of murder in the second degree, having also submitted the issue of self-defense and manslaughter.

### 7.—Same—Charge of Court.

Where, upon trial of murder, and a conviction of murder in the second degree, the court gave a proper charge applicable to the facts and the issues in the case, there was no reversible error.

### 8.—Same—Self-defense—Charge of Court.

Where, upon trial of murder, the evidence raised the issue of self-defense upon which the court submitted a proper charge, there was no reversible error.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of murder in the second degree; penalty, fifty years in the penitentiary.

The opinion states the case.

*Baldwin & Baldwin,* for appellant.—On question of ruling out evidence of want of ill-will: Miller v. State, 31 Texas Crim. Rep., 609; McKinney v. State, 8 Texas Crim. App., 626; Johnson v. State, 29 id., 150; Sims v. State, 10 id., 131; Jackson v. State, 55 Texas Crim. Rep., 79; Kemper v. State, 63 id., 1; House v. State, 171 S. W. Rep., 206.

On question of admitting in evidence testimony at coroner's inquest, etc.: Wells v. State, 43 Texas Crim. Rep., 451; Williford v. State, 36 id., 414; Burnam v. State, 61 id., 51; Edwards v. State, 61 id., 307.

On question of cross-examination of defendant's witnesses: Johnson v. State, 27 Texas Crim. App., 163; Baldridge v. State, 45 Texas Crim. Rep., 193, and cases supra.

On question of introducing written statements of witness made before coroner: Terry v. State, 72 S. W. Rep., 382.

On question of argument of counsel: Davis v. State, 54 Texas Crim. Rep., 236; Huddleston v. State, 70 Texas Crim. Rep., 260, 156 S. W. Rep., 1168.

On question of court's charge: Skeen v. State, 51 Texas Crim. Rep., 39; Parker v. State, 46 id., 461; Reed v. State, 174 S. W. Rep., 1066; Vinson v. State, 117 S. W. Rep., 846; Pratt v. State, 50 Texas Crim. Rep., 227; Holcomb v. State, 54 id., 486.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—This is the second appeal in this case, the opinion on the former appeal being reported in 73 Texas Crim. Rep., 576, 166 S. W. Rep., 503. Upon this trial appellant was adjudged guilty of murder and his punishment assessed at fifty years confinement in the State penitentiary.

In the first bill of exceptions it is recited that Mr. J. C. Baldwin was permitted to testify that appellant had been working for him at the time of this homicide, and that his reputation was that of a peaceable, law-abiding citizen. After so testifying, the bill states if he had been permitted to do so he would have further testified:. "That on the night of the killing Reeves Bolden was at witness' house in the afternoon, and worked for my wife in the yard, that he left my house agreeing to come back and cook supper, and wash the dishes, and I made arrangements with him to go to my farm at Cleveland, Texas, and I left that night myself on the Houston East & West Texas Railway train, which left at about 8 o'clock that night. Reeves told me that he could not go that night. He did not have time to go out to Mr. Susholtz's store, where he got his mail, and get his mail. That he expected a letter from his mother, who was then sick in Austin, and he wanted to go by there (Susholtz's store) and get the letter. That after he got the letter, his mother was not too sick, he would come up on the morning train, which left Houston at about 7 o'clock the next morning; and he would be at Cleveland the next morning. I left that night and went to Cleveland, and was not at home that night. Reeves Bolden knew I was not there." This testimony is offered for the purpose of showing that there was no intention on the part of Reeves to kill Morris Susholtz. That he went to Susholtz's store that night for the purpose of getting his mail. It was also offered for the further purpose of showing that Reeves had no ill-will or malice against Susholtz on that occasion.

Reeves Bolden testifies in substance to these same facts. The State did not seek to contradict this testimony by any witness, nor to prove any contradictory statements, therefore the testimony was not admis-

sible to support appellant's testimony. In the record the witnesses for both the State and defendant make it clear that when appellant went into deceased's store he asked for his mail, and that the difficulty arose over deceased not at the time of handing out his mail to him, if any there was at the store. As to what deceased said and appellant said on this occasion after he had asked for his mail is a disputed question, but not the fact that appellant went into the store after his mail. There was no question of express malice in the case—no evidence of a premeditated killing, but the evidence and all the evidence shows that the homicide occurred from a quarrel then and there engendered. The State's theory is that when appellant asked for his mail, deceased told him he would have to wait until his wife returned; that appellant became quarrelsome and overbearing, when deceased ordered him out of the house; that further words ensued, and appellant cut and killed deceased when he had done nothing more·than curse him. Appellant's contention is that he went in to get his mail, when deceased cursed and ordered him out of the house; when he insisted on getting his mail deceased picked up an ax handle, struck him over the head, injuring his ear, when he in defense cut him with a small knife; that he did not intend to kill him, and left at once. Thus it is seen that there is no question raised in the record, but appellant's mission to the store of deceased was to get his mail, and there was no effort to show a premeditated killing. In fact, the killing having occurred when the old statute was in force, the court only submitted murder upon implied malice. Under such circumstances there was no error in the ruling of the court. If the State had endeavored to show a murder upon express malice—a premeditated killing—a different question might be presented as to the admissibility of this testimony, and it will be found in those cases where such testimony has been held to be admissible is where the State was endeavoring to show a preconceived murder, or it was admitted to support appellant when the State had sought to impeach his testimony.

The next four bills relate to the cross-examination of the defendant's witnesses Joe Hayden, Rellie Davis, Sandy Davis and Jack Smith, and to the admissibility of certain portions of the testimony of Joe Hayden, Rellie Davis and Sandy Davis given at the coroner's inquest, and on the former trial of this case. Appellant contends that as he was not present at the coroner's inquest, the testimony was inadmissible even for impeachment purposes. The court in approving the bills states: "When the witness was interrogated by counsel for the State with reference to his testimony on the former trial of the case and before the coroner, and counsel for the defendant objected to the questions asked, counsel for the State then stated in reply to the objections by defendant that the testimony was not offered for the purpose of showing how the homicide or the facts relating thereto, but was only offered for the purpose of laying a predicate for the introduction of testimony showing that the witness had made contradictory statements to·that made by him upon the present trial of the case for the purpose of impeaching

the testimony of the witness and affecting his credibility, and for no other purpose, and when counsel for the State in rebuttal offered the previous statements and testimony of the witness, he also stated that the same was offered not for the purpose of showing the facts as to the defendant's guilt or innocence but only for the purpose of affecting the credibility of the witness and impeaching his testimony given on the present trial of this case, by showing that he had previously made contradictory statements from his testimony given on the present trial of this case, and that said testimony was admitted solely for that purpose and the court then stated to the jury that the testimony could not be considered by them as affecting the guilt or innocence of the defendant, but solely for the purpose of affecting the credibility of the witness sought to be contradicted, and that it was for the jury to say whether or not such testimony did affect his credibility."

The court in his charge instructed the jury: "You are instructed that certain evidence read to you by the State which purported to have been given by the witnesses Joe Hayden and Rellie Davis before M. McDonald, justice of the peace, at the inquest proceedings over the body of the deceased was admitted before you not for the purpose of affecting the guilt or innocence of the defendant, but was only admitted for the purpose of or not affecting the credibility of said witnesses Hayden and Davis, and it is for you to determine whether or not said testimony does affect the credibility of said witnesses, and you must consider the same for no other purpose.

"You are instructed that certain evidence read to you by the State which purported to have been given by the witnesses Rellie Davis and Sandy Davis before the Criminal District Court of Harris County, Texas, at a former hearing of this case was admitted before you not for the purpose of affecting the guilt or innocence of the defendant but was only admitted for the purpose of or not affecting the credibility of said witnesses Rellie Davis and Sandy Davis, and it is for you to determine whether or not said testimony does affect the credibility of said witnesses, and you must consider the same for no other purpose."

When one seeks to impeach a witness by proof of former contradictory statements to his evidence on the trial, it is immaterial whether the appellant was present or not. Mr. Branch in section 871 of his Criminal Law, correctly states it is: "Not error to permit the State to impeach the witnesses for defendant by proof of contradictory statements, where witness denies making the statements or testifies that he does not remember making the statement inquired about," citing Huffman v. State, 28 Texas Crim. App., 174; Levy v. State, 28 Texas Crim. App., 203; Fuller v. State, 35 Texas Crim. Rep., 35; Campos v. State, 50 Texas Crim. Rep., 289; Newman v. State, 70 S. W. Rep., 951. Again he says: "Witnesses may be impeached by proof of his statements before the grand jury which are in conflict with his testimony given on the trial," citing Clanton v. State, 13 Texas Crim. App., 139; Rippey, v. State, 29 Texas Crim. App., 37; Gibson v. State, 45 Texas Crim. Rep., 312; Wyatt v. State, 38 Texas Crim. Rep., 256; Gallegos v. State,

48 Texas Crim. Rep., 58; Wooley v. State, 64 S. W. Rep., 1054; Turner v. State, 51 S. W. Rep., 366; Gutgesell v. State, 43 S. W. Rep., 1016. Appellant cites those cases which hold that such testimony is not admissible as original testimony, and hold that where the testimony does not tend to impeach any evidence given by the witness on the trial of the case as to the main issues, it is not admissible. Those cases correctly so hold, but each of these witnesses claimed to be present and testified to material facts about incidents occurring at the time of the homicide in appellant's behalf, and the State was properly permitted to show that they had not so testified at the coroner's inquest and on the former trial of this case on those material issues. As to the witness Jack Smith, the State did not introduce any of his testimony given at the coroner's inquest, nor at the former trial in this case, but when he answered the questions propounded that he did not so testify, the State permitted such testimony to remain unimpeached.

The next bill, No. 5, is rather lengthy and purports to give a portion of the argument of Mr. Harris in the opening address for the prosecution. This bill the court declines to approve, and appellant does not seek to prove it up in the manner provided by law. When the court rejected the bill for the reason stated by him, if appellant desired to present the questions for review, he should have proven it up as required by the statute, that the remarks complained of were in fact used on that occasion by Mr. Harris.

The next bill includes the entire address of Mr. Love in the closing argument for the State, embracing some sixteen pages of typewritten matter. Appellant, before Mr. Love began his speech, stated that he had secured the services of a stenographer to report the speech, and stated "that the defendant desired to take a bill of exception to any and everything that Mr. Love might say in his closing argument,— which was not sustained by the record, or which was unjustified by the record, or that might be of an inflammatory character or calculated to injure the rights of appellant." As this blanket bill was thus taken in advance of the speech being made, it would be incumbent upon appellant at the close of the argument to point out those portions of the speech to which he objected, and we find in the record three special charges requesting the court to instruct the jury not to consider certain portions of Mr. Love's address, and we must conclude these are the only portions of the speech which appellant thought injurious to him or out of the record. In the first he asked the court to instruct the jury "that argument of the State's private prosecuting counsel as to the size of the knife used by defendant at the time he cut the deceased being other or being larger and longer than that testified to by the defendant will not be considered by you." It is true that appellant was the only person who testified as to the size of the knife, but there was evidence as to the character of the wound, the depth of it, and that it penetrated the chest cavity. These facts would authorize State's counsel to argue as to the probable length of the blade of the knife, and

he would not be compelled to accept defendant's testimony as to the size of the knife. The argument was legitimate.

Appellant also requested the court to instruct the jury, "You are instructed not to consider the argument of private prosecuting counsel with reference to a pistol not being a deadly weapon, as there is no such issue involved in this case and such argument is not justified by the record." Counsel was presenting the question that you must always consider the mode and method of the use of a weapon in passing on whether or not an instrument is a deadly weapon, and whether or not death was intended. He said if a pistol was thrown at a man and not fired, etc., it would not necessarily be a deadly weapon. Taking the connection in which the argument was presented, it was not improper. He also requested the court to instruct the jury "Not to consider the argument of private prosecuting counsel about the widow and children of deceased, and about her being made a widow and them orphans and like expressions of counsel, and about defendant being a culprit and other like argument made in his closing remarks." Nothing improper is here shown; to refer to a defendant as being a culprit is rather a mild expression in comparison with language sometimes used. As to referring to the widow and her children, the widow was a witness for the State, and that she was a widow the jury was necessarily so informed by her testimony. The record also discloses that appellant left the children orphans, and appellant if he expected us to review the speech, should have pointed out in some way the objectionable part thereof. The matter is presented in too general a way to call for review.

The objection that the court erred in submitting the issue of murder, and in refusing to give the special instructions requested by appellant, instructing them that the evidence was insufficient to authorize a conviction for murder, presents no error. While it is true the evidence offered in behalf of defendant would present self-defense, yet the State's case is that appellant killed deceased because he refused to deliver to him his mail; that both cursed each other, and when deceased called appellant "a black son-of-a-bitch" appellant drove his knife into his breast, inflicting a fatal wound. Article 1131, Penal Code, provides that insulting words or gestures are not adequate cause to reduce an offense to manslaughter, and according to the State's case, the most deceased did was to curse appellant and order him out of the house.

We have carefully reviewed each and every one of the exceptions to the charge of the court. Several of the errors objected to were cured by the court changing his charge to conform to the objections as made. The other exceptions present no error. It was proper for the court to limit the testimony introduced to impeach the witnesses named, and this paragraph was properly worded. It is copied hereinbefore and we do not deem it necessary to do so again. The special charges requested were fully covered by the court's main charge. He presented manslaughter in a way not complained of; also the issue of aggravated assault. On the issue of self-defense he instructed the jury:

"Reasonable apprehension of death or great bodily harm will excuse

a party in using all necessary force to protect his life or person, and it is not necessary that there should be actual danger, provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time, and in such case the party acting under such real or apparent danger is in no event bound to retreat in order to avoid the necessity of killing his assailant.

"If from the evidence you believe the defendant killed the said Morris Susholtz, but further believe that at the time of so doing the deceased had made or was making an attack on him, which, from the manner and character of it and the defendant's knowledge of the character and disposition of the deceased, caused him to have a reasonable expectation or fear of death or serious bodily injury and that acting under such reasonable expectation or fear, the defendant killed the deceased, then you should acquit him; and if the deceased was armed with an ax handle at the time he was killed and was making such attack on defendant, and if the ax handle used by him (if any) and the manner of its use were such as were reasonably calculated to produce death or serious bodily harm, then the law presumes the deceased intended to murder or to inflict serious bodily injury upon the defendant.

"In determining whether the defendant acted in what reasonably appeared to him to be his necessary self-defense, it is the duty of the jury to look at the transaction from what you believe from the evidence was the standpoint of the defendant at the time, and consider the same in the light of the facts and circumstances as you believe they appeared to the defendant at the time and not from any other standpoint, but it is the jury to determine from the evidence what were the appearances to the defendant, and what the standpoint of the defendant was and in what light he did in fact view the facts and circumstances."

This fully covered the issue of self-defense as presented by the testimony, and appellant's criticisms are not well founded.

The judgment is affirmed.

*Affirmed.*