## J. E. GODWIN v. THE STATE.

### No. 2749.   Decided March 25, 1903.

**1.—Continuance—New Trial.**

An application for continuance, when considered on the motion for new trial, will be held properly overruled where, from the evidence adduced at the trial, it appeared that the absent testimony set forth would have been of a damaging character to, and could not possibly have benefited defendant.

**2.—Same.**

An application for continuance for an absent codefendant charged with the crime, was properly refused where it appeared that such codefendant was a fugitive from justice.

**3.—Theft of Horse by Conversion of Bailee—Exclusion of Bill of Sale.**

On a trial for theft of a horse by conversion of bailee, a bill of sale offered in evidence was properly excluded where its execution was not proved by the attesting witness.

**4.—Same—Practice.**

On a trial for horse theft by bailee, where the court had excluded a bill of sale because not proved up by the attesting witness, it was not error to refuse the issuance of a subpoena for the said witness, who was 150 miles away. The defendant should, under the circumstances shown, have asked a withdrawal and continuance of the case for said absent witness.

**5.—Same.**

It would not have been error to refuse a postponement or continuance, had it been asked, after the exclusion of the bill of sale as evidence, it appearing that the contents of said bill of sale were fully shown by other testimony; and it being further shown that said bill of sale was executed under an assumed name by defendant's codefendant.

**6.—Calling and Trying Case Out of Its Regular Order on the Docket.**

An objection that the case was called and tried out of its regular order, is without merit where it is shown that the case was the first upon the docket or regular call, undisposed of, when defendant was required to announce for trial.

**7.—Confessions—Inducement.**

Where defendant made two confessions to two sheriffs, who had properly warned him, after his arrest, the second confession to one of the sheriffs was not rendered inadmissible because the sheriff told him, after it was made, that in his opinion it would be better for him if his codefendant could be arrested, the confession being the same as previously made to both sheriffs by defendant when there was no pretense that an inducement was held out to him to make it.

Appeal from the District Court of Comanche.   Tried below before Hon. N. R. Lindsey.

Appeal from a conviction of horse theft by conversion by a bailee; penalty, two years imprisonment in the penitentiary.

The opinion sufficiently states the case.

[No briefs for either party found with the record.—Reporter.]

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—The indictment contains two counts, the first charging theft, and the second theft as bailee under a contract of hiring. The conviction was under the second count.

Application for continuance was properly refused. Conceding the

diligence sufficient, which is not a fact, still, viewed from the standpoint of the motion for new trial, the testimony, if it had been adduced, could not have possibly benefited appellant. On the contrary, it would have been of a damaging character. By the witness Mrs. Garrett it was expected to be shown that appellant and Edwards, who was associated with him in hiring the horses and hack at Stamford, in Jones County, informed her that he owned and was in possession of certain patent receipts, and was going to procure a conveyance and get out in the country and engage in the business of selling said receipts and patents; that at the time appellant left her boarding house, where he and Edwards were boarding, they left a portion of their clothing at said house, with the understanding they would return in a few days. The second witness, whose name is not known, is said to reside near Nugent, in Jones County, and is the man to whom Edwards traded the hack obtained from the "Ice-Man" in Stamford, whose name is unknown, and because name is unknown he has been unable to procure process. He expected to prove by this witness that he traded for the hack in which defendant and Edwards left Stamford, and to which the horse defendant here stands charged with stealing was being worked, and that Edwards was the man who traded the horse, and who was exercising control and management of the horse, and at the time appellant did not exercise any such control over the hack or horse; and set up no claim in and to said horse. He also sought a continuance on account of the absence of Edwards, his codefendant, who, from the statement of the judge in his qualification to the bill, is a fugitive from justice, and under indictment in a separate bill for the theft of the same horse. The testimony shows that Edwards and appellant went into the wagon yard of T. M. Spindle, alleged owner, in Stamford. Edwards did the talking, and secured the horse in question from Spindle, to be driven out into the country. Appellant was with him, and together they went off with the horse. They secured another horse about the town, and a hack from a party termed the "Ice-Man," and immediately left, going south, or a little southwest, until they reached the neighborhood of a place called "Nugent." They were traveling together in the hack. At Nugent they traded the hack for a buggy. Thence they pursued their way down the country—the details of the route is given, but it is unnecessary to repeat—until they reached the town of Comanche, where the horse they got from Spindle was sold to a man named Ross. Edwards did most of the talking during the trade. Ross and Holcomb bought the horse and buggy, and defendant during the conversation stated that the title to the property was all right. After the trade was made and the money paid over, $12.50 of it went into appellant's possession. Thence they went to Fort Worth, where they separated; appellant going to the residence of his father in Cherokee County, and Edwards to parts unknown. If the evidence of the unknown man at Nugent, to whom the hack was traded, had been given before the jury as stated, it would have had a tendency to strengthen the State's case, because appellant had traveled

from Stamford to that point with Edwards, and if he had not known before of the guilty purpose of Edwards he then did, and knew that Edwards was trading off property that did not belong to him, and as bailee converted it to his own use. This would have had a strong tendency to show not only a want of honesty, but an actual acting together with Edwards, in the sale of the horse in Comanche to the witness Ross, and this, coupled with the fact, if Spindle had been present and testified to the acts set out in the application for continuance, would have shown from the time of getting the horse in Stamford until its disposition in Comanche an acting together by these parties. Concede that this testimony had a decided bearing on this case, and that it was probably true, it would have strengthened the State's case, would at no point have militated against it, and therefore could not have been beneficial to appellant. It could not have been legitimately tended to bring about a milder punishment or an acquittal. Of course, the application for the presence of Edwards would not be seriously considered. Therefore the court did not err in refusing to grant the continuance.

By bill of exceptions it is shown that defendant offered the testimony of Ross to the effect that he bought the horse appellant is charged with stealing, and the party who sold him the horse executed and delivered to him the following bill of sale, which was written by the party making the sale, to wit: "Comanche, Texas, July 7, '02. This is to certify that I have this day sold and conveyed unto D. W. Ross one bay mare branded 'E' on right shoulder; also one gray mare branded 'A B' on left shoulder; also one saddle and one red bottom open buggy and harness. [Signed] J. C. Stacy. Witness: B. B. Holcomb." The State objected to the introduction of the bill of sale, because its execution was not proven by the attesting witness Holcomb. Appellant immediately asked for a subpoena for Holcomb, which was refused by the court. Appellant asserts that he was unaware of the fact that the bill of sale was in existence until spoken of by the witness Ross, while testifying, and that in the opinion of counsel this bill of sale was highly material and necessary. The court qualifies this bill by stating, in substance, that Ross testified, when he purchased the horse from Edwards, or Stacy, as he signed the bill, he received this bill of sale, and Holcomb signed it as a witness; that the bill of sale was then offered in evidence, and was ruled out on objection by the State, because its execution had not been proved, and the court refused a subpoena for the witness Holcomb. The bill is further qualified by stating that the evidence showed that Holcomb was in Concho County, some 150 miles southwest from Comanche County, where defendant was being tried. The court, after hearing the evidence as to where witness was, would not order subpoena, because it was impossible to get witness for four or five days, and he would not delay the case to send for him, and defendant did not ask to withdraw his announcement and continue the case on account of the absence of said witness, and the trial was concluded within a few hours. The ruling of the court was correct in regard to the exclusion of the bill

of sale.    Morrow v. State, 22 Texas Crim. App., 239; Graves v. State, 28 Texas Crim. App., 354; Williams v. State, 30 Texas Crim App., 153. There was no error in the further action of the court refusing to issue the process under the circumstances stated.    If appellant thought the bill of sale was of sufficient importance, it was incumbent on him to ask a postponement or continuance of the case in order to have the witness brought in.    But, as we view the case, had this been sought it would not have been error to have refused it.    There is no question in the record.    It is proven beyond peradventure that the bill of sale was given by Edwards under the name of Stacy.    Ross details all the facts and circumstances, both with regard to the trade, the entire transaction, and the bill of sale.    The contents of the bill of sale was completely before the jury, and we do not believe the fact that had the bill of sale gone before the jury it could have added anything to Ross' testimony or to the fact that Edwards, under the name of Stacy, signed the bill of sale and made the trade.

Bill of exceptions was reserved to the action of the court calling the case peremptorily, and forcing defendant into trial before reaching his case regularly on the docket, and states in the bill that the cases of State v. McDaniel, State v. Hardin, State v. Van Cleave, and State v. Montgomery were in advance of this case.    The court explains this by stating that this case had been passed by the court until September 5th at the request of appellant's counsel; that on the 5th the court was engaged in the trial of another case, which was not concluded until the forenoon of the following day.    On September 6th, when the case was called, all of the cases on the docket in advance of this case had then, by orders of the court entered several days prior to the 6th, been disposed of by setting said cases for a later day of the term, and the case against appellant was the first on the docket on the regular call undisposed of on said 6th day of September, at which time appellant was required to announce.    As explained, there is no error in this.    McGrew v. State, 31 Texas Crim. Rep., 336; Shehane v. State, 13 Texas Crim. App., 533; Jones v. State, 8 Texas Crim. App., 648; Nichols v. State, 3 Texas Crim. App., 546.

Appellant's confessions made to Robinson, sheriff of Smith County, and Swan, sheriff of Jones County, were introduced over his objection. It is made to appear from the bill, and the qualification of the court to the bill, that Robinson, sheriff of Smith County, and Swan, sheriff of Jones County, accompanied by a deputy sheriff of Cherokee County, went to the residence of appellant's father, and arrested appellant. While under arrest, Robinson, in the presence of Swan, warned appellant in regard to any statement he might make as required by the statute. He then made a statement or confession to the officers, giving a history of the entire transaction from the time they secured the horses and hack in Stamford, Jones County, until final disposition of the property in Comanche County.    When the officers separated, Swan, with defendant, reached Tyler, and took the train on the Cotton Belt, going thence to

Waco. Some time between 2:30 a. m. and daylight appellant began talking to Swan again with reference to his case, when Swan reminded him of the warning Robinson had given him, and asked him if he recalled it. Defendant replied that he understood it fully. He then practically went over the same statement to Swan. This testimony was properly admitted. The bill, as prepared by counsel, makes the witness Swan state "that he then told appellant it would be far better for him to tell witness the whole truth about the matter, so that the other man, Edwards, could be caught, and that it would be the easiest way for him [appellant] to get out of the entire matter." But the qualification to the bill, which was accepted by appellant, eliminates this, for the court says: "That after defendant had made this statement witness Swan told defendant in his opinion it would be better for him if Edwards could be arrested." If, under appellant's view of it, there could have been any inducement to make the second statement to Swan, the court has eliminated that view of it by the qualification. But in no event do we believe it would amount to anything had the statement been made by the sheriff, as contended for by appellant, because the same statement, without any inducement whatever, had been previously made to Robinson and Swan.

No error appearing in the record, the judgment is affirmed.

*Affirmed.*