### LAURA DECKARD v. THE STATE.

No. 226. Decided January 19, 1910.

**1.—Murder—Continuance—Fugitive from Justice.**

Where, upon trial for murder, it appeared that the absent witness, for which the second application for continuance was made, was a fugitive from justice, and could not be found, there was no error in overruling the motion. Following Anderson v. State, 53 Texas Crim. Rep., 341.

**2.—Same—Want of Diligence—Second Application.**

Where, upon trial for murder, it appeared from the record that, after the case was called, defendant's counsel had asked for an attachment for the absent witness, but it did not appear whether the attachment was issued, or, if so, what disposition was made of it; that during the trial no application was made to suspend same to await the coming of the witness, and that the witness, if existing, could have easily been reached by process, and the defendant did not use the utmost diligence to have secured his attendance, there was no error in overruling the application for a continuance and the motion for new trial.

Appeal from the District Court of Nacogdoches. Tried below before the Hon. James I. Perkins.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*King & King,* for appellant.

*John A. Mobley,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—On an indictment charging her with the murder of her husband, Kit Deckard, filed in the District Court of Nacogdoches County, on the 20th day of March, 1907, appellant was at a trial held on April 12, 1909, convicted of the offense of manslaughter, and her punishment assessed at confinement in the penitentiary for two years.

That the appellant shot and killed her husband is not denied in the testimony. She interposed a plea of self-defense. The testimony of the State distinctly negatives any self-defense, but accounts for the killing on the ground of jealousy entertained by appellant on account of the attentions to and improper conduct of her husband with another woman. The only eyewitness produced was Joe Wind-

ham, a negro, whose testimony is vigorously assailed, and it was shown by a number of witnesses who heard his evidence on the examining trial that he had given an account of the circumstances at the time, so far as observed by him, in harmony with appellant's plea of self-defense, and had also stated that at the immediate time the gun fired he was behind a tree and did not see it. However, several witnesses for the State testified denying that he had so testified on the examining trial.

As stated by counsel for appellant, the only question of any importance relates to the action of the court in overruling the application for continuance. This application was based upon the absence and want of the testimony of two witnesses, J. Will Harrison and Fred Patrick. The diligence as to Patrick up to the time the case was called for trial was clearly sufficient, and the application also averred that he had been in attendance as a witness at all times theretofore in obedience to the process served on him, and had never disobeyed the process so served upon him until this term of the court. The facts expected to be proven are as follows: "That on the day of the alleged homicide they resided at Sacul, in Nacogdoches County, Texas, and was engaged in cutting, hauling and delivering pine logs to a sawmill near said place; that Harrison had deceased, Kit Deckard, employed upon the day that he was killed, cutting stocks; that the deceased and the defendant had a very sick child with pneumonia during said time, and deceased had asked to be relieved from his employment the two days prior to the killing, in order that he might go home and remain with his wife and assist her in the care of the said child, which was then very low, but that deceased did not go home during said two days and remain with said child and wife, but was near where he was at work, with another negro woman, the last fact being stated to the witnesses by the deceased; that they were present on the morning deceased was killed, and saw the entire transaction, and that they were nearer to the trouble than any other witness except Joe Windham, a negro man, who had gotten behind a tree, when the trouble came up and could not see the parties; that when the defendant came to where they were at work, they heard her ask the deceased why he had not come home and assisted with the sick child the two days before, and heard her further ask him where that woman was that he had stayed with during said two days; that deceased began cursing and abusing the defendant, and told her that she had better go on home, or he would give her a damn good whipping; that defendant replied that she was looking for that woman that he had stayed with the two days before, when deceased cursed defendant for a damn bitch, and said if she did not go home that he would make her go, and stated that it was none of her damn business where he had stayed the two days before, and told her that if she did not go home that he would whip hell out of her, and that at that time deceased

reached to the ground and got hold of a handle of an ax and started to raise up with same, telling the defendant that if she did not go home that he would knock hell out of her, and would beat her damn brains out, when defendant shot deceased, as he was straightening up with the ax in his hand, making the statement above referred to; that defendant remarked to the witness Harrison, 'Oh, Mr. Harrison, I did not want any trouble with Kit (meaning deceased), I was looking for that woman;' that deceased was very angry and had picked up the ax as he made the statement, and turned towards defendant, as if to start at her with the ax; that they were only about seven or eight feet apart at the time of the shooting, and that deceased was a negro man about 35 years of age, and defendant was his wife about 28 years of age. That deceased would weigh about 160 pounds; that there was no one else present except the State's witness, Joe Windham, and that he had gotten behind a large tree and did not see the trouble."

In addition to the necessary statutory averments, the following additional matter is included in the application: "In connection with this application and as a part hereof, this defendant would show to the court that she is a negro woman about 28 years of age; that the deceased was her husband and was about 35 years of age; that the two witnesses, J. Will Harrison and Fred Patrick, are both white men, the one about 36 years of age, and the other about 24 years of age, and were the only eyewitnesses to the transaction and the only parties present, save and except Joe Windham, a negro man, who, as soon as deceased began to curse, abuse and threaten defendant, got behind a large tree and saw none of the transaction to which the two witnesses named now absent from this court would testify; that defendant is informed that the said witness, Joe Windham, now in attendance upon this court, proposes to testify that he saw all of said difficulty, and that defendant herein, without cause or provocation, shot deceased; that said witness, Joe Windham, lives in the immediate community with all the relatives of the deceased, and has testified heretofore at the examining trial that he did not see all of the difficulty, but now proposes to change all of his testimony, so as to show that he saw the entire transaction and that defendant was in the wrong, and the testimony of said absent witnesses, each of whom could have no interest in this cause, will not only establish that the defendant acted in self-defense, but that said witness, Windham, did not see the transaction when the shot was fired, and would therefore impeach and contradict the testimony of the said witness upon whose testimony the State now relies for a conviction."

This bill of exception is allowed by the court with the following qualification: "The witness Harrison was not only shown to be a nonresident of the State, whose residence was unknown, but also was and had been for some two years a fugitive from justice, charged

with crimes in Navarro County, and perhaps other counties of this
State, and that the officers having process for him had never been
able to effect his arrest or to locate him.  As to the witness Patrick,
I acted in overruling the application upon the following circum-
stances:  The case had been before me *personally* from the time the
indictment was filed (some two years).  It had been continued at
one term upon the formal application of the defendant (as shown
by the record), this continuance being on account of the absence
of the witness Harrison, at the other terms the case was either not
set for trial, or, if set down for a particular day and a special venire
ordered, it was, on each occasion, called up before such day had been
reached and continued generally, upon a sort of quasi consent based
upon the accepted statement of defendant's counsel that the witness
Harrison had not been found, that he had recent information of
his whereabouts and hoped to procure his attendance by the next
term and that he could not prove the same facts by other witness,
notice would then be given that the case had been continued and
that the witnesses and special venire need not attend, etc.  On this
account there was no call of the witnesses made and no means of
knowing whether Patrick was present or not, and during all these
proceedings nothing was ever said of Patrick being a material witness
or that the facts now claimed to be within his knowledge could be
proved by him (note that as set out in the application they are the
same as by Harrison), but on the contrary, I was always given to
understand that these facts could only be proven by Harrison and
by no other witness.  I respectfully call the court's attention also
to the following facts in relation to this application insofar as based
upon the absence of the witness Patrick; the application shows the
residence of Patrick to be Sacul, a station in Nacogdoches County,
on T. & N. O. R. R., only about one hour's run by railroad from the
town of Nacogdoches; he is said to be temporarily in Cherokee County
working at a sawmill.  Cherokee County adjoins Nacogdoches County,
and all parts of it have immediate and direct connection with the
town of Nacogdoches by T. & N. O., H. E. & W. T. and Cotton Belt
Railroads, and practically all the saw mills in Cherokee County are
located on or near one or the other of these roads, that is, T. & N. O.
or Cotton Belt.  Upon the overruling of the application an attach-
ment to Cherokee County returnable instanter was ordered in behalf
of defendant for witness Patrick—the trial occupied some two days
and the motion for a new trial was not acted upon until some two
weeks after the trial and conviction.  During the trial no mention
was made to suspend same to await the coming of the witness, and
after the conviction no affidavit of the witness supporting the state-
ment of what he would testify was ever made, or, if made, was ever
called to the attention of the court.  If such affidavit had been pre-
sented I doubtless would have granted a new trial,

"From the foregoing circumstances I did not believe when over-ruling the application that Patrick (if there was, in fact, such person) would testify to such facts as claimed, and I have been confirmed fully in that behalf by the developments of the evidence on the trial as well as by the failure of defendant during and after the trial to make any effort to procure the testimony during the trial (further than a formal application for an attachment) or to procure the sup-porting affidavit of the witness to present with the motion for new trial.

"I believed when acting on the application and am convinced that as to the witness Patrick it was all a *trick* for delay, and it is for your Honorable Court to say whether, because of precedent, if there be such, the trial courts must submit to such imposition, and the due and just administration of the law be thus defeated."

In connection with the observations of the court as to the applica-tion being a mere trick for delay, it should be stated that in corre-spondence filed with us, the trial court expressly and unequivocally exonerates appellant's counsel from any imputation of bad faith or unprofessional conduct, and states that "If you desire me to do so and will return me the bill and its qualification I will interline in the latter the specific statement that 'I do not impute any wrong to defendant's attorneys,' or words of the same import and meaning. You are also authorized to use this letter before the Court of Crim-inal Appeals in such manner as you may wish and as may be permis-sible."

We have had some doubt in respect to the sufficiency of the appli-cation under all the circumstances. It has been quite uniformly held that the granting or refusal of such application for continuance has always been a matter discretionary with the court.   Krebs v. State, 8 Texas Crim. App., 1; and further, that nothing will be presumed in aid of a second application for continuance.   The explanation of the court as to the witness Harrison makes it clear that the continu-ance should not have been granted on account of his absence.   The fact that he was a fugitive from justice, and could not be found, under all the authorities clearly disposes of the matter as to him against appellant.   Anderson v. State, 53 Texas Crim. Rep., 341.   We think, as here presented, that when the absence of Patrick was discovered, that it was the duty of counsel, in view of his nearby residence, and the fact that his whereabouts was stated to be known, to have used the utmost diligence to have secured his attendance on the trial.   The only statement of diligence, after the case was called, is a mere aver-ment that counsel had "this day asked for an attachment for said witness to Cherokee County, Texas."   Whether the attachment was issued, or if so, what disposition was made of it, is not stated, and we are not justified in aiding the application by any inference.   In view of the fact, as stated in the court's explanation, that during

the trial no application was made to suspend same to await the coming of the witness, and the fact that the counties of Nacogdoches and Cherokee and all parts of them have immediate and direct connection with the town of Nacogdoches by the three railroads named in the statement above quoted, would seem to have suggested and required the utmost diligence of counsel to have secured the attendance of this witness, even after the application for continuance had been overruled. In view of the court's explanation, and the long delay of more than two years during which the case has been pending, we feel that we ought not to reverse the conviction, unless in the light of the entire record there had been a clear and palpable abuse of the discretion which the law confides to trial courts. Under the circumstances we have concluded we ought not to interfere, and there being no error in the record, the judgment of conviction is affirmed.

*Affirmed.*

McCord, Judge, not sitting.