Ernest Cox v. The State.

No. 3487. Decided March 17, 1915.

**1.—Perjury—Materiality of Statement.**

Where, upon trial of perjury based upon false testimony in the County Court in a trial for slandering a female, it was not shown that the defendant in said slander case ever made such slanderous statements. Held, that it was not necessary to show in the instant case of perjury whether said defendant in said slander case was guilty of making said slanderous statement, as the issue in the perjury case was whether defendant had sworn falsely in said slander case in testifying that he had had sexual intercourse with the said female named in said slander case, which testimony was material. Davidson, Judge, dissenting.

**2.—Same—Evidence—Reputation for Chastity.** .

Where witnesses were permitted to testify to isolated extraneous matters tending to show that the State's witness was not a virtuous female, there was no error in admitting testimony on cross-examination that these witnesses had attended church gatherings and social functions with said prosecuting witness. Davidson, Judge, dissenting.

**3.—Same—Evidence—Hearsay—Declaration of Third Parties.**

Where, upon trial of perjury, the defendant sought to attack the character of the State's witness who was alleged to have been slandered in the original case in which the perjury was alleged to have been committed, by introducing testimony that said prosecutrix had stated that she had had sexual intercourse with a certain party, it was reversible error in permitting the State in rebuttal to show that said third party had made a statement that he had had no such sexual intercourse to said prosecuting witnesses, as this was purely hearsay.

Appeal from the District Court of Callahan. Tried below before the Hon. Thomas L. Blanton.

Appeal from a conviction of perjury; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Wagstaff & Hardwicke,* for appellant.—On question of general reputation: Tate v. State, 68 Texas Crim. Rep., 45; Cowden v. State, 68 id., 62.

On question of insufficiency of evidence: Pipes v. State, 26 Texas Crim. App., 318.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of hearsay evidence: Williams v. State, 24 Texas Crim. App., 17; Brown v. State, 20 S. W. Rep., 924; Tinsley v. State, 52 Texas Crim. Rep., 91.

DAVIDSON, JUDGE.—The indictment alleges a trial in the County Court on an information for the offense of slander spoken of and concerning one Minnie Simpson by Ethridge in the following language, towit: "I would not be caught in daytime with that girl for one thousand dollars. She is nothing but a damned whore." It was alleged in the County Court in the information that appellant was sworn and testified as a witness in the case, and that he testified that he had had sexual intercourse with Minnie Simpson behind her father's store in Potosi. The indictment possibly may be sufficient to allege the materiality of the testimony, but it is doubtful. I will not write, however, upon that inasmuch as my brethren in the companion cases of Reed v. State and Cutbirth v. State, this day decided, have held the indictment sufficient.

1. There are several attacks made on the record because there was no evidence introduced on the trial showing that Ethridge, the defendant in the slander case, had ever used the language imputed to him in the information in the County Court; in fact, the statement of facts

does not show that Ethridge ever made the statement. Without this appellant's testimony, under this indictment, would not be material. His testimony, if material, in the County Court arose out of the fact that it was germane to the allegation that appellant had said of Miss Simpson that she was a whore, and if he testified in the County Court it was in aid of appellant's side of the case and to sustain his statement that she was a whore. If Ethridge did not make the statement that Miss Simpson was a whore, then appellant's testimony would not be material. It is a well settled rule under the decisions wherever that question has come, that the indictment must not only allege the materiality of the testimony but it must also be shown as a prerequisite to conviction that the testimony was material. Mr. Branch thus tersely and correctly states the rule: "If the statement on which perjury is assigned is not shown by the evidence to be material, conviction will not be sustained." Branch's Crim. Law, sec. 647; Garrett v. State, 37 Texas Crim. Rep., 198; Pyles v. State, 47 Texas Crim. Rep., 435; Liggett v. State, 47 Texas Crim. Rep., 450; Maroney v. State, 45 Texas Crim. Rep., 524; McVicker v. State, 52 Texas Crim. Rep., 508; Wilson v. State, 27 Texas Crim. App., 47; Lawrence v. State, 2 Texas Crim. App., 479. In the Garrett case, supra, it was said: "The authorities require that the indictment shall show the materiality of the alleged false testimony, or shall allege that the same was material; and in either event, as we understand it, the facts must be proved which show the materiality of the alleged false testimony. If the assignment is based on false testimony delivered in a judicial proceeding, so much of the record in that proceeding must be shown as to authorize the court to declare that the testimony alleged to be false was material to some issue in the case. Mr. Bishop says: 'The allegation of materiality must also be proved. It is not enough that the testimony was actually admitted; yet it suffices that the indictment sets out the facts whence the materiality judicially appears. Where it does not, the course is to prove all or so much less than all of the pleadings and evidence brought forward at the former trial as will duly present the question; whereupon the court, not the jury, will decide, as of law, whether or not what the defendant is shown to have testified to therein was material.' See 2 Bishop's New Crim. Proc., sec. 935. Our own court has followed the principle here laid down. See Lawrence v. State, 2 Texas Crim. App., 479, and Wilson v. State, 27 Texas Crim. App., 47." Presiding Judge White delivered the opinion in the Wilson case, supra, and the head-notes state correctly the rule as follows: "It is essential in a perjury case not only that the indictment shall allege that the court before which the judicial proceeding in which the perjury is charged to have been committed had jurisdiction of such judicial proceeding, but that fact must be established by the proof." In the case from which that proposition was stated it was held that the evidence was not sufficient because the complaint which formed the predicate of the information was not introduced in evidence. Judge White said: "Without a complaint an information would be wholly invalid—

would confer no jurisdiction upon the court, and would be worthless for any purpose. It follows, then, that in order to sustain an allegation of judicial proceeding by information, not only must such information be introduced in evidence but the complaint upon which it is based or founded, must be also introduced." So in this case, the basis of the prosecution was that appellant committed perjury in the County Court in a trial where Ethridge was charged with the slander of Miss Simpson by calling her a "damned whore." It was upon this issue, if upon any issue in the County Court, that that case was tried, if in fact it was tried. The information and complaint in the County Court were introduced in evidence, but these are all the proceedings of the County Court which were introduced. No witness testified in this case that Ethridge ever made any such statement. The entire record is singularly and strangely silent upon that question. If it was proved in the County Court that Ethridge made the statement, and that in support of his contention, or the truthfulness of his statement imputed to him, appellant appeared and testified that he had had intercourse with Miss Simpson, his testimony would be material, because it went directly to the issue. If Ethridge made that statement, it should have been proved on the trial of this case in order to show the materiality of appellant's testimony in that he stated he had had intercourse with Miss Simpson. If Ethridge made no such statement as charged in the information, then appellant's testimony would not be material on the question, for in that event there would be nothing before the court. In a perjury case the alleged false statement must be material—not only alleged so in the indictment, but it must be so proved. The strength of the materiality would not be questioned, but the fact that it was material was the paramount question. Unless it was material the State had no case, for perjury is based upon the fact and the law which says that the alleged false testimony must be material. Without showing that Ethridge had made that statement, the State failed to show the materiality of appellant's testimony that he had had intercourse with Miss Simpson. It must be remembered that the materiality in a perjury indictment bears upon the issue charged in the indictment and not on the general broad proposition he may have sworn a lie or stated a falsehood. That falsehood, if it was one, must bear upon the issue stated in the indictment, and must be material to that issue. The mere allegation of an issue in an indictment does not prove itself; it may be sufficient as pleading but the pleading must be proved to be true and by two witnesses or one witness with strong corroborating testimony. If this record had shown that Ethridge made the statement imputed to him, we would have a different question, but inasmuch as this record does not show that Ethridge ever made such statement, the State has failed to show the materiality of the alleged false evidence of appellant. This is sustained by all these cases that I have heretofore cited.

2. Miss Fuller was a witness to impeach Miss Simpson. Miss Simpson denied she ever had intercourse with appellant or anyone else.

Miss Fuller testified that some three or four years prior to the trial of this case Miss Simpson told her that she had intercourse with Harry Self three times on one trip. The State then introduced some witnesses by whom it proved that Harry Self had testified in the County Court that he had never seen anything improper in the conduct of Miss Minnie Simpson. The court admitted this over the many objections urged by appellant. This was error. This was not impeaching testimony so far as Miss Fuller was concerned. She had not stated anything one way or the other what Self had said to her. She had testified, however, that Miss Simpson had informed her that she had intercourse with Self. Self was not produced as a witness, nor offered to be produced as a witness, although he could have been had before the court, but even had he been before the court he could not have impeached Miss Fuller. No predicate had been laid for it, and no conversation was shown or attempted to be shown that ever occurred between them. It was hearsay evidence pure and simple, and to make the error the more glaring the court verbally instructed the jury that this testimony was admitted upon the question of the credibility of Miss Fuller. By no possible legal construction could it affect the testimony of Miss Fuller. Judge Harper, in the Reed case, supra, holds this to be error, and correctly so, and it is unnecessary to discuss this further. In this connection it might be stated they were permitted to prove that Self had testified in the County Court that he had never had intercourse with Miss Simpson. This was a part of the same matter, and it was erroneously admitted under what has been said.

3. Another complaint is urged against the admission of testimony by the State, over proper objection, that some of the witnesses had attended church gatherings and social functions which Miss Simpson also attended. The court seems to have admitted this testimony on the theory it tended to show the extent and character of knowledge possessed by witness as to general reputation of Miss Simpson. We do not believe this was admissible. The State introduced evidence of good character and reputation of Miss Simpson, but this character of testimony was not admissible for that purpose, and upon another trial it should not be permitted to go to the jury.

4. Another bill complains that the court erred in permitting Miss Simpson to testify that she submitted to an examination by some physicians to determine the fact that she was a virgin. The testimony of the physicians was admitted, and Miss Simpson also testified that the examination was made. The physicians testified as to their conclusion or opinion about that question favorably to the State, and the State was permitted to show by the girl that she *willingly* underwent or submitted to the examination by these doctors. This ought not to have been admitted. Her willingness was a condition of the mind on her part which ought not to be permitted to influence the jury against the defendant. He was in no way responsible for the condition of her mind and knew nothing of it. It was not a fact to be considered by the jury in passing on appellant's attitude of guilt or innocence, and

was not a circumstance to be weighed against him. It was in the nature of a self-serving statement and act or mental condition upon the part of the witness unknown to appellant and which could be in no way binding on him.

There are other questions in the case of more or less moment, some of which the writer thinks reversible, but my brethren have taken the other view and I do not care to write further in this opinion.

For the errors indicated the judgment is reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, PRESIDING JUDGE, and HARPER, JUDGE (concurring).—We agree to the reversal of this case on the grounds stated in the Reed and Cutbirth cases, this day decided, but we do not agree to the remainder of the opinion in this case, and respectfully dissent therefrom. We do not think it was necessary to show in this case whether or not Ethridge was guilty of the slander of Miss Simpson. That issue was tried and disposed of in the County Court, and on appeal to this court the judgment was affirmed. (Ethridge v. State, 169 S. W. Rep., 1152.) And it was not proper nor necessary to determine in this case whether or not Ethridge used the language alleged, and whether or not he was guilty of slander. Appellant was on trial under an indictment in which he was charged with having perjured himself by swearing falsely on that trial, and the issue on this trial was whether or not *he had* in that trial sworn to a certain state of facts, and if so was his testimony false and material to the issue then on trial. The indictment in this case alleged "that Ernest Cox, on or about the 21st day of April, One Thousand Nine Hundred and Fourteen (1914) and anterior to the presentment of this indictment, in the County of Taylor and State of Texas, did then and there unlawfully, before a regular term of the County Court of Taylor County, Texas, holden in and for said county, and then and there in session in said county, the Hon. E. M. Overshiner, judge of said court, presiding and in a certain criminal judicial proceeding, of which the said court then and there had jurisdiction, wherein the State of Texas was plaintiff and Henry Ethridge was defendant, and wherein Henry Ethridge was duly charged by information with the offense of slander spoken of and concerning one Minnie Simpson in the following language, towit: 'I would not be caught in daytime with that girl for one thousand dollars. She is nothing but a damned whore.' And wherein issue was duly joined between the said State of Texas and the said Henry Ethridge came on to be tried in due form of law, and was then and there tried before the said judge and a jury in that behalf duly sworn, and the said Ernest Cox then and there appeared as a witness in behalf of the said Henry Ethridge, defendant, and was then and there duly and legally sworn, and did take his corporeal oath before the said court and jury as a witness to testify in said cause, which said oath was then and there required by law and necessary to the ends of public justice, and which

said oath was then and there administered to him, the said Ernest Cox, by the Hon. E. M. Overshiner, judge of said court as aforesaid, then and there having sufficient and competent authority, under the law, to administer the said oath to the said Ernest Cox in that behalf, and that upon the trial of said issue so joined between the said parties aforesaid, it then and there became and was a material question and inquiry, whether or not the said Minnie Simpson was a virtuous and chaste woman and whether or not the said Henry Ethridge had spoken the truth of and concerning the said Minnie Simpson, and it then and there became and was a material question and inquiry whether or not the said Ernest Cox had sexual intercourse with the said Minnie Simpson behind her father's store in Potosi, and the said Ernest Cox, being so sworn as aforesaid, then and there, on the trial of said issue, upon his oath as aforesaid, did falsely, wilfully and deliberately, before the Hon. E. M. Overshiner, judge as aforesaid and before the jurors so sworn as aforesaid, depose, state and testify, amongst other things, in substance and in effect following: that is to say that he, the said Ernest Cox, had had sexual intercourse with the said Minnie Simpson behind her father's store in Potosi, thereby intending and meaning that he, the said Ernest Cox, had had sexual intercourse with the said Minnie Simpson, the said alleged slandered female, and that the said Minnie Simpson was not a virtuous and chaste woman, which statement so made by the said Ernest Cox was then and there material to the issue in said cause; whereas, in truth and in fact, the said Ernest Cox, did not have and had not had sexual intercourse with the said Minnie Simpson behind her father's store in Potosi, and whereas, in truth and in fact the said Ernest Cox had never at any time had sexual intercourse with the said Minnie Simpson, and which said statement so made by the said Ernest Cox as a witness in said case in the manner and form aforesaid was deliberately and wilfully false, as he, the said Ernest Cox, then and there well knew."

The issues made by this indictment are made plain, and one of the issues under this indictment is not whether or not Ethridge made the alleged slanderous statement, but the issue is, was he in fact *tried* in the County Court with having made such statement, and was the testimony of appellant *material* to the issue tried in the County Court? Judge Overshiner testified on this trial, among other things: "I am county judge of Taylor County. I was acting as county judge in my official capacity during the months of March, April and May, 1914. I was county judge when Henry Ethridge was tried in my court charged with slander. I presided at that trial. I knew the defendant, Henry Ethridge, at that time. He was present at the time he was tried. He was tried before me as county judge, and before a jury composed of six men. The jury was sworn and empanelled to try the case of The State of Texas v. Henry Ethridge. I don't remember the day of the month that that case was tried, but my recollection is that it was at the April term of the County Court, beginning the third Monday in April. The information charging the defendant, Henry Ethridge, with

slander, was read to the jury and the defendant, Henry Ethridge, pleaded not guilty to that information.

"The defendant, Ernest Cox, was present at that trial. I know Ernest Cox. He is in the courtroom at this time. That is him sitting over there. He appeared as a witness in the trial of the case of The State of Texas v. Henry Ethridge. He was legally and duly sworn by me as county judge. I had all of the witnesses to come in and hold up their right hands and administered substantially the following oath to them: 'Do you and each of you solemnly swear that your testimony in the case now pending before the court shall be the truth, the whole truth, and nothing but the truth, so help you God.' The defendant, Ernest Cox, held up his hand and took that oath with the other witnesses. After being so sworn, he testified on behalf of the defendant, Henry Ethridge, in that trial. Henry Ethridge, at that time, was tried before myself and a jury in the County Court.

"The defendant, Ernest Cox, testified at that trial that he had had sexual intercourse with Miss Minnie Simpson. He testified that he had had intercourse with Miss Simpson behind her father's store, in Potosi, Texas. He stated that to the best of his recollection that that act of intercourse occurred in the summer of 1913."

The State then introduced the complaint and information, but as they both charge the same we insert only the information: "H. Rob Keeble, county attorney of the County of Taylor, State aforesaid, in behalf of said State, presents in the County Court of said county at the February term, A. D. 1914, of said court that Henry Ethridge, late of the County of Taylor, on or about the 24th day of January, A. D. 1914, and prior to the filing of this information, with force and arms, in the County of Taylor in the State of Texas, did then and there orally, falsely and maliciously and falsely and wantonly impute to one Minnie Simpson, then and there an unmarried female in this State, a want of chastity, in this, towit: He, the said Henry Ethridge, did then and there, in the presence and hearing of Horace Holly, Carl Putnam, and divers other persons, falsely, maliciously and wantonly say of and concerning the said Minnie Simpson: 'I would not be caught in the daytime with that girl for a thousand dollars; she is nothing but a damned whore,' against the peace and dignity of the State."

The record then discloses that appellant in open court made the following agreement: "We admit, if the court please, that the affidavit and information here were duly filed in the County Court of Taylor County in the Henry Ethridge case and that these are the ones; and that the trial of Henry Ethridge was had on this complaint and this information, and that the County Court was held at the proper place."

By other witnesses it is shown that appellant did testify on the trial of Ethridge in the County Court that he, the said Ernest Cox (appellant), had had sexual intercourse with the said Minnie Simpson behind her father's store in Potosi.

Miss Minnie Simpson swears that Ernest Cox never at any time or place had carnal knowledge of her. Dr. Alexander, Dr. Armstrong and

Dr. Estes testify that they made a physical examination of Miss Minnie Simpson, and that she had never had intercourse with any man. That she was a virgin. Many witnesses testify that the reputation of Miss Simpson for virtue and chastity is good; also her reputation for truth and veracity.

The allegation of slander was that Ethridge had said Miss Simpson was a whore. To prove that fact appellant took the stand and swore he had had sexual intercourse with the girl. The materiality of such testimony is patent to anyone, and it would not be material whether or not Ethridge made the statement. He was charged with having made the statement, and on trial of that case, in order to aid Ethridge in proving that she was a whore appellant took the stand and swore he had had sexual intercourse with the girl, and on the trial of this case the issue was not whether or not Ethridge had made the statement that Miss Simpson was a whore, but the issue was, did appellant on that trial swear that he had had carnal intercourse with the girl, and was it false if he did so testify, and was it material to the issue on trial in the slander case, and it would not be material whether the defendant in the slander case was guilty or innocent. While this record bristles with evidence that Miss Simpson was not a whore, yet if it had been shown in the trial of the slander case that she was, and yet on that trial appellant falsely testified he had had intercourse with the girl, he could and should be convicted of perjury. We thoroughly agree with the rule of law quoted by Judge Davidson from Mr. Branch on Criminal Law: "If the statement on which perjury is assigned is not shown by the evidence to be material, conviction can not be sustained." But the materiality of the assignment of perjury is shown by the evidence in this case as is manifest by that portion of the record and testimony hereinbefore copied, and we think anyone will readily recognize that when a trial is had and the issue being tried is whether or not a given female "was a whore," evidence by a man that he had had intercourse with the woman would be material to that issue, and have a strong tendency, if true, to show the truth of the charge. We also agree to what is said in Garrett v. State, 37 Texas Crim. Rep., 198: (1) "The authorities require that the indictment shall show the materiality of the alleged false testimony, or shall allege that the same was material." The indictment in this case (hereinbefore copied) shows that the alleged statement was material to the issue, and also alleges that it was material.

(2) "On either event, as we understand it, the facts must be proved which show the materiality of the alleged false testimony. If the assignment is based on false testimony delivered in a judicial proceeding, so much of the record in that proceeding must be shown as to authorize the court to declare that the testimony alleged to be false was material to some issue in the case."

In this case the complaint and information was introduced; Ethridge's plea of not guilty is shown, and that a trial was had before Judge Overshiner in the County Court on the issue of whether or not

the alleged slander was uttered, and whether or not it was true if uttered. As before said, the issue of Ethridge's guilt or innocence would not be an issue in this case, and the merits of that case should not be again tried on this trial. Whether or not he was guilty or innocent would not affect the guilt or innocence of appellant under this indictment. Again, we say we agree to what was said by Judge White in Wilson v. State, 27 Texas Crim. App., 47, quoted by Judge Davidson, but it has no application to this case, for in this case both the complaint and information were introduced in evidence, and they clearly show that the issue was in the County Court, and doing so we think anyone can see that the testimony of appellant on that trial was material to the issue involved in that case.

We do not deem it necessary to review the other authorities cited by Judge Davidson, but if one will read them we think it will be shown that the record in this case (that portion of it herein copied) shows that they and each of them hold the indictment sufficient and the testimony ample, if the State's testimony is believed, that appellant gave the alleged false testimony, and that it was false, and also shows the materiality of the alleged false testimony to the issue tried in the County Court.

As witnesses were permitted to testify to isolated extraneous matters tending to show that Miss Simpson was not a virtuous female, we think it permissible to show on cross-examination of these witnesses that they had attended church gatherings and social functions with Miss Simpson. This evidence would be admissible to rebut the isolated transactions to which they had testified.

As we have said in the Reed and Cutbirth cases, we think no error was committed in the above matters, nor in the other matters to which Judge Davidson refers but does not discuss.