PLEAS REED v. THE STATE.

No. 3938. Decided February 16, 1916.

Rehearing denied March 15, 1916.

1.—Perjury—Indictment.

Where, upon trial of perjury, the indictment followed approved precedent, there was no error in overruling a motion to quash. Following Anderson v. State, 56 Texas Crim. Rep., 360, and other cases.

2.—Same—Continuance—Second Application—Bill of Exceptions.

Where defendant accepted the bill of exceptions with the qualification by the court that it was the second application for continuance, he cannot be heard to dispute that fact on appeal, and where one of the absent witnesses was a fugitive from justice and had testified before and the same was permitted to be introduced in evidence, and the testimony of another absent witness was immaterial and the witness will probably not testify as contended, there was no error in overruling the motion for continuance.

3.—Same—Rule Stated—Continuance—Motion for New Trial.

In passing on a supposed error in refusing a continuance, the court will look to evidence adduced on the trial, and where it appears therefrom that the absent witness could not have known anything about the facts to which it is alleged he would testify, there is no reversible error. Following Lindsey v. State, 35 Texas Crim. Rep., 164, and other cases.

4.—Same—Rule Stated—Cumulative Testimony.

It has always been the rule of this court that a second application for a continuance will not be granted to secure testimony that is merely cumulative of the testimony adduced on the trial. Following Harvey v. State, 35 Texas Crim. Rep., 545, and other cases.

5.—Same—Evidence—Opinion of Witness—Corroboration.

Where the perjury was based on testimony of defendant in a slander case that the slandered female had had carnal intercourse with him, the defendant, and there was testimony in the said slander case that said female had been physically examined by several physicians who testified that the said female had never had carnal intercourse with any man, this was a statement of a fact, and not merely an opinion, and could be used in corroborating said female to the effect that defendant swore falsely, and brought the State's testimony under

the rule that a conviction for perjury can be sustained by one credible witnesss corroborated strongly by other evidence.

### 6.—Same—Charge of Court—Corroboration—Perjury.

Where the court in his main charge instructed the jury that they could not convict the defendant for perjury, unless the falsity of the statement had been established by the testimony of one credible witness strongly corroborated, and the testimony of the main State's witness denied that she had had carnal intercourse with the defendant as he falsely swore on the trial for slander, and was corroborated not only by the physicians who physically examined her and testified that she had never had carnal intercourse with any man, but by a number of witnesses testified to her good reputation for virtue and chastity, there was no error in refusing a requested charge that the corroboration by testimony of physicians as to the physical examination was not sufficient.

### 7.—Same—Evidence—Reputation for Chastity.

Where, upon trial for perjury, one of the issues was whether the prosecuting witness was a chaste woman, and the defendant had introduced testimony tending to show that she was not, there was no error in permitting the State to introduce testimony that her reputation for virtue and chastity was good. Following Wilson v. State, 17 Texas Crim. App., 525.

### 8.—Same—Rule Stated—Rebuttal Testimony.

It has always been the rule of this court when the defendant by his testimony injects any issue into the case material thereto, the State can meet that proof by rebuttal testimony. Following Knight v. State, 64 Texas Crim. Rep., 541, 144 S. W. Rep., 967.

### 9.—Same—Charge of Court—Voluntary Witness.

Where, upon trial of perjury, the evidence showed that on trial for slander defendant had testified that before said alleged slander he had had carnal intercourse with the alleged slandered female which the latter denied, and upon which the perjury was based, and the evidence further showed that the defendant voluntarily testified as a witness in said slander case, there was no error in refusing a requested charge that the jury could not convict defendant if he was compelled to testify in such slander case.

### 10.—Same—Evidence—Affidavit—Impeachment.

Where, upon trial of perjury, a witness for defendant gave damaging testimony to the reputation for virtue and chastity of the State's main witness, and was asked on cross-examination whether he had not said that the affidavit he made was untrue, and that part of the affidavit which related to this matter was introduced in evidence, there was no error in refusing the introduction of the remainder of said affidavit which related to a different matter.

### 11.—Same—Evidence—Questions Propounded by Court.

Where defendant objected to questions propounded by the court, and the bill of exceptions showed that the jury was retired at the time, and no objections were raised thereto at the time and that none of the questions which were asked the witness by the court were asked by the State's counsel, there was no reversible error.

Appeal from the District Court of Taylor. Tried below before the Hon. Thomas L. Blanton.

Appeal from a conviction of perjury; penalty, two years imprisonment in the penitentiary.

*J. M. Wagstaff* and *S. P. Hardwicke,* for appellant.—On question of

second application for continuance: McKinney v. State, 41 Texas Crim. Rep., 413.

C. C. *McDonald,* Assistant Attorney General, for the State.

HARPER, Judge.—Appellant was convicted of perjury, and his punishment assessed at two years confinement in the State penitentiary.

This is the second appeal in this case, the opinion on the former appeal being reported in 76 Texas Crim. Rep., 335, 174 S. W. Rep., 1065. As the facts are so fully stated in that case, and in the companion cases of Cutbirth v. State, 76 Texas Crim. Rep., 325, 174 S. W. Rep., 1066, and Cox v. State, 76 Texas Crim. Rep., 326, 174 S. W. Rep., 1067, we do not deem it necessary to state them again.

Appellant again moved to quash the indictment. A copy of the indictment is set forth in the Cox case, supra, and on the former appeal we held the indictment valid in all three cases, and we do not deem it necessary to again discuss that feature of the case. Anderson v. State, 56 Texas Crim. Rep., 360; Jernigan v. State, 43 Texas Crim. Rep., 114; Washington v. State, 22 Texas Crim. App., 26; Chavarria v. State, 63 S. W. Rep., 312; Yardley v. State, 55 Texas Crim. Rep., 486.

When the case was called for trial appellant moved to continue the case on account of the absence of two witnesses, Ed Carter and Mrs. Ruth Alred. As to the witness Carter, the record discloses he was a fugitive from justice, and, of course, there was no error in overruling the motion as to him. (Godwin v. State, 44 Texas Crim. Rep., 599; Anderson v. State, 53 Texas Crim. Rep., 341; Deckard v. State, — Texas Crim. Rep., 34, 124 S. W. Rep., 673; Harris v. State, 8 Texas Crim. App., 90; Vann v. State, 48 Texas Crim. Rep., 11.) In addition, the witness Carter had testified on the former trial of this case, and appellant was permitted to introduce his testimony given at that trial on this trial. As to the witness Mrs. Alred, it may be said that the diligence is sufficient, and it appears that she was expecting to be shortly confined. So the sole question is, was the testimony of such a material nature as the court should have granted the continuance? In the motion it is stated that the witness would testify that she was at a party at the house of Emmett Taylor, and "game of good night" was played at said party; that the prosecuting witness, Miss Simpson, and Ernest Cox were partners while playing the game, and that Miss Simpson conducted herself in a lewd and lascivious manner; that Cox embraced her, and she lovingly laid her head on Cox's shoulder. Miss Simpson denied any such conduct, and denied that Cox was her partner in the game. So the testimony would be admissible to impeach Miss Simpson. Again, it was an issue in the case as to whether Miss Simpson was a virtuous and chaste female, and the testimony would be admissible as original testimony on that issue, as well as for impeaching purposes. Appellant contends that this was his first application for a continuance, but the court in approving the bill states it was the second application, and the court gives this as the ground for overruling

the application when first presented. Appellant accepts the·bill with this qualification, and he can not be heard to dispute that fact. Again when the matter was presented to the court again in the application for a new trial, the court calls attention to the fact that the defendant's witnesses, Emmett Taylor and Eugene Gist, place Mrs. Alred in such position that she could not have seen Ernest Cox and Miss Simpson while playing the game of good night. Mr. Gist says he was the partner of Mrs. Alred while playing that game, and he testifies to no such facts as it is alleged Mrs. Alred would testify to. The appellant's witness Emmett Taylor testified on the trial: "In going around the house that night, Ernest Cox and Miss Minnie Simpson were the last couple to come around. When they came around the house I was squatting down at the west end of the house at the end of the kitchen. I saw Ernest Cox and Miss Minnie Simpson come around the house. They were talking. I did not hear what they said. Mr. Ernest Cox had his arm around Miss· Minnie Simpson, and she was leaning her head against his shoulder and they were walking very slow." He testifies he was the only person in position to see them, but that he afterwards told Mrs. Alred what he saw. It is thus seen that the testimony adduced by defendant on the trial shows that if Mrs. Alred was present she would not testify as contended, but her information as to the conduct of Miss Simpson on that occasion was received from Emmett Taylor, and the record discloses that Emmett Taylor was present and testified at the instance of appellant, and as stated in Branch's Crim. Law, section 253, in passing on supposed error in refusing continuance, the court will look to evidence adduced on the trial. (Willison v. State, 7 Texas Crim. App., 400; Clampit v. State, 9 Texas Crim. App., 27; Dowdy v. State, 9 Texas Crim. App., 292; Bronson v. State, 59 Texas Crim. Rep., 17, 127 S. W. Rep., 175.) And where it appears from the evidence on the trial that the absent witness could not have known anything about the facts which it is alleged that she would testify to, it was held that the application was properly overruled. Lindsey v. State, 35 Texas Crim. Rep., 164; Boyd v. State, 50 Texas Crim. Rep., 138; Wigfall v. State, 57 Texas Crim. Rep., 639. Appellant's witnesses Eugene Gist, who was Mrs. Alred's partner in the game of·good night, and Emmett Taylor, place Mrs. Alred in such position that she could not have seen what took place while Ernest Cox and Miss Simpson were playing this game, if they in fact were partners on that occasion. And, according to the court's qualification, this was a second application for a continuance, and if Mrs. Alred would testify as alleged, such testimony would be but cumulative of the testimony of Emmett Taylor, and it has always been the rule in this court that a second application for a continuance will not be granted to secure testimony that is merely cumulative of testimony adduced on the trial. (Harvey v. State, 35 Texas Crim. Rep., 545; Grimestead v. State, 44 Texas Crim. Rep., 1; Dobbs v. State, 54 Texas Crim. Rep., 579; Bearden v. State, 47 Texas Crim. Rep., 271.)

It appears on the trial of this case that one Henry Ethridge was prosecuted for slander, in that he had said of and concerning Miss Simpson that "she was nothing but a damned whore." On that trial appellant testified as a witness, and testified he himself had had carnal knowledge of Miss Simpson. On that statement this prosecution is based. Dr. Alexander and three other physicians testify to having made an examination of Miss Simpson, and from that examination they testify that Miss Simpson had never had carnal intercourse with any man. Appellant objected to this testimony, claiming that it was but the opinion of the witnesses. The witnesses testify fully as to the examination, the condition they found her private parts, and gave the facts as to why they say she was a virgin. Such testimony is not an opinion, but a statement of a fact they know to be true from their medical knowledge. Appellant says that if the testimony was admis sible, then the court ought to have instructed the jury as requested by him: "You are instructed that the corroboration required by law requires the proof of facts and the mere opinion of medical experts alone is not such corroboration in law as will authorize you to find the testimony of Miss Simpson sufficiently corroborated." Article 806 of the Code of Criminal Procedure provides, that in trials for perjury no person shall be convicted except upon the testimony of two credible witnesses, or of one credible witness corroborated strongly by other evidence as to the falsity of the defendant's statement.

Appellant had testified on the trial of Henry Ethridge for slandering Miss Simpson, that he, appellant, "had had carnal intercourse with the said Minnie Simpson at a bridge west of Potosi." Miss Simpson testified on this trial that that statement was not true. That is one witness as to the falsity of the statement. Now, is she strongly corroborated? Four doctors testify to examining her and they and each of them swear positively that Miss Simpson had never had intercourse with any man. If that is not strong corroboration of her testimony we do not understand how her testimony could be corroborated when appellant places himself and Miss Simpson alone at the bridge. The court, at the request of appellant, instructed the jury: "Before you can convict the defendant you must believe beyond a reasonable doubt that Miss Minnie Simpson is a credible witness, and if you have a reasonable doubt as to whether or not she is a credible witness you will acquit the defendant." And in the main charge had instructed the jury they could not convict appellant unless the falsity of the statement had been established by the testimony of one credible witness strongly corroborated. In addition to this the fact that Miss Simpson's reputation for truth and veracity was good was sworn to by a dozen or more witnesses, and that her reputation for virtue and chastity was good was sworn to by some twenty or more ladies and gentlemen residing in the community where she lived. So it is seen the State did not rely on the medical men alone to establish that she was a credible witness, or to corroborate her testimony, and under no phase of the case was the

above special charge requested by appellant called for, and there was no error in refusing to give it.

However, appellant insists in another bill that the court was in error in permitting witnesses to testify that the reputation of Miss Minnie Simpson for virtue and chastity was good. Appellant called a number of witnesses who testified to facts, if true, which would have a tendency to show that Miss Simpson was not a virtuous and chaste woman. In fact, his defense was predicated upon the theory that what he swore to in the Ethridge trial was true, and he introduced witnesses to prove that Miss Simpson was the character of woman who would likely engage in such acts. Whether or not she was a virtuous girl was an issue in the case, and put into the case by the testimony offered by appellant, and it was in rebuttal of this testimony that the court permitted the State to introduce witnesses who testified that Miss Simpson's reputation for virtue and chastity was good. In this case appellant by his testimony had attempted to prove that Miss Simpson was a woman of lewd and lascivious character, and having done so he can not be heard to object to testimony tending to show that she was not that character of woman. This question was discussed by Judge White in Wilson v. State, 17 Texas Crim. App., 525, and he there held that when the defendant by his testimony had attacked the reputation of a woman for virtue and chastity, then the State in rebuttal could prove her reputation for virtue was good. And it has always been the rule in this court when the defendant by his testimony injects any issue in the case, material to the case on trial, the State can meet that proof by appropriate testimony. We discussed that question at length in Knight v. State, 64 Texas Crim. Rep., 541, 144 S. W. Rep., 967, and cited the authorities in this and other States.

Appellant requested the court to instruct the jury that before they could convict the defendant the State must show that he voluntarily and wilfully testified in the County Court, in the case of Henry Ethridge, and if they find that he was compelled to do so over his protest, defendant should be acquitted. The bill shows that the court approves it with the following qualification: "Refused, because the uncontroverted evidence shows that without having been subpoenaed, the defendant voluntarily came from his home in Callahan County to testify in the trial and behalf of Henry Ethridge in the County Court of Taylor County, and did testify voluntarily without process, and that it was only when he was asked, while on the stand, whether he had intercourse with Minnie Simpson, that he asked the court if he would be required to answer that question, and the court said yes, whereupon defendant testified without further protest." As thus qualified, the court did not err in his ruling. The record discloses that appellant lived in Callahan County, and without being summoned voluntarily went to Taylor County as a witness and testified without having been served with any process requiring him to do so.

It is made to appear by the record that Sid Richardson. as a witness for appellant, had given testimony damaging to the reputation of Miss

Simpson for virtue and chastity. On cross-examination he was asked if he had not gone to the home of Miss Simpson's brother and told him about making this affidavit, and that it was untrue, and that he was going to get the affidavit back. After such examination, so much of the affidavit was introduced in evidence as related to the matter about which he was cross-examined, when appellant desired to introduce the remainder of the affidavit, which related to a different matter. The court declined to permit the remainder of the affidavit to be introduced in evidence, his reasons for so doing he stated at the time being as follows: "Mr. Stenographer, you will note that the State did not offer the affidavit until counsel for the defense forced them to offer it in order to identify the affidavit concerning which the witness was talking to Miss Simpson on the night in question, when he stated that he would try to get the affidavit back, and the court sustained the defendant's objection that the State would first have to show what affidavit was referred to; in other words, that the affidavit referred to showed the language which was then under investigation, towit, that of going to the circus at Abilene and it was only for the purpose of identification and only for the purpose of showing that this particular affidavit was the one referred to, that the court permitted it to be introduced, and the part attempted to be offered by the defense now is not germane to any matter that was brought out in connection with the affidavit, or by any witness concerning the affidavit, and it would be— the court holds that this witness, Richardson, is here and the court will permit counsel to interrogate him on this point if they wanted to. If they want to ask this witness any questions concerning Miss Minnie Simpson's general reputation for chastity and virtue, why the court will permit them to ask Richardson those questions if they so desire."

The remainder of the bill relates to questions propounded by the court to the witness Sid Richardson. Before asking the questions the court had the jury retired, and the jury heard none of the questions and no answer of the witness. After said questions had been propounded, appellant objected to the proceedings on the ground that it was calculated to intimidate the witness, as the questions were such as to lead the witness to believe that a prosecution for perjury might be expected. The court states: "The court understood from the State that they had finished their cross-examination with one exception, and that was to lay a predicate, and the State asked for time in which to go out and speak to a witness before they laid that predicate. I understood that the examination was over. That is what he said, and during the recess, while the State's attorney was out questioning the witness, the court took a recess and sent the jury out and then made the examination that the record shows and during none of which the counsel raised any objection whatever, and the court wants the bill to show that the jury was out and heard nothing of it and that none of the questions which the court has asked the witness, the court will not let

the State ask them. The court will not let the State ask any question that the court has asked." As qualified the bill presents no error.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied March 15, 1916.—Reporter.]